CARPENTER STRAW-SEWING MACH. CO. v. SEARLE et al

(Circuit Court of Appeals, Second Circuit. February 26, 1894.)

No. 46.

1. PATENTS—REISSUES—VALIDITY.
 A reissue after long delay, during which adverse equities have arisen, cannot be sustained, even if the claim is technically narrowed instead of broadened, when the original patent did not indicate, or even hint at, the invention of the reissue, as an invention, although the patentee did actually make it, but, through ignorance of its nature or other mishap, failed to describe it in the specifications. 52 Fed. 809, affirmed.

2. SAME—STRAW BRAID SEWING MACHINES.
The Hooper reissue patent, No. 10,600, for an improvement in machines for sewing straw braid, is void, as to the fifth claim, as covering an invention not disclosed in the original patent. 52 Fed. 809, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Appeal from a decree of the circuit court for the southern district of New York, which dismissed the appellant's bill in equity founded upon the alleged infringement of the fifth claim of reissued letters patent No. 10,600, dated May 26, 1885, to Mrs. Mary P. C. Hooper, formerly Mary P. Carpenter, assignor to the complainant, for improvements in machines for sewing straw braid. The original patent was dated January 4, 1876. The reissue was applied for on January 30, 1885.

M. B. Phillips, for complainant.
Howson & Howson, for defendants.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The defenses set up in the answer, and supported by testimony, were the invalidity of the reissue, insufficiency of the description of the patented and infringed combination, lack both of novelty and of invention, and noninfringement. The circuit court held that the first defense was clearly sustained. The considerations which led to that conclusion were so fully stated by Judge Coxe, in his opinion, as to obviate the necessity of a lengthy discussion at this time. 52 Fed. 809.

The fifth claim of the reissue is as follows:

"5. The combination of the presser foot, F, the lever guide, K, carrying the presser foot, the roller guide, E, and the lip, substantially as described."

The original fifth claim omitted the words "and the lip." The statement of the invention covered by this claim, in the original specification, is as follows:

"The invention further consists in the combination of a presser foot, a lever carrying the presser foot, and a roller guide."

The same sentence is contained in the reissue, with the addition of the words "and a lip." The office, the peculiarities, and the location of the lip are scantily described in the original patent, as follows:

"Said strips of braid are introduced under a front lip, and from thence under a presser foot, F. * * * The front lip, under which the braid is introduced, the guide wheel or roller, E, and the presser foot, F, are all carried by a lever, K, pivoted at g to the work-table carrier, D," etc.

Neither the metal stock which supports the lip, nor the lip, was shown in the drawings or the model, and, as a matter of course, the lip was not referred to in the specification by letter.

The specification in the reissue is a little more definite upon the subject of the lip. The sentence which was first quoted above was modified so as to read, "The back strip of braid is introduced under a front lip," etc. The complainant asserts that this altera-

tion simply amended a defective specification, so as to show the fact that the lip is a separator, which separates the two pieces of braid in advance of the presser foot, and thereby prevents the upper strip from running beneath the guide; while the defendant asserts that the idea of separation, which confessedly is contained in the quoted words of the reissue, is a palpable departure from the intentional statement in the original that "said strips of braid are introduced under a front lip." The lip is not shown in the drawings of the reissue, which, however, were modified in the following respect: The original drawings, and the statement that the strips (both strips) were introduced under a front lip, were apparently in harmony. In the drawings of the reissue, the parts of the braids which projected beyond the table, and which were there apparently separated, were removed, and thus the inconsistency between the original drawings and the reissue was mitigated. We shall not rest a decision of the case upon the mere fact of this alteration of the reissue, but upon the broader ground that the lip, whatever its office was, had no place in the invention which was made the subject of the original fifth claim. The reissue was applied for nine years after the date of the original patent. During the first three years 107 machines were made under an arrangement with Messrs. Kelly & Gallagher. Six were used by a firm called the Carpenter Straw Sewing Machine Company, while others were licensed to manufacturers in New York, Philadelphia, Newark, and Chicago. The firm was then incorporated, but litigation ensued with Kelly & Gallagher, which, although it terminated in a compromise, resulted in crippling the ability of the patentee to make money by means of licenses, or to build new machines. In 1878 she went to England, and sold her English patent for the machine, and afterwards, for three years, the United States patent was involved in an interference with an application of one Palmer for a reissue, one of the issues relating to the original fifth claim. This interference was decided in favor of Mrs. Hooper. The Wilcox & Gibbs Company, the real defendant in this case, during the years 1879 to 1884, inclusive, made and sold machines which are claimed to be infringements of the fifth claim of the reissue.

The argument of the appellant is based, substantially, upon the alleged fact that the claim of the reissue is narrower than the corresponding claim of the original patent. It contends that, inasmuch as the combination of the fifth claim of the reissue is one of four elements, whereas the corresponding combination in the original contained three elements only, the reissued claim is for a narrower invention than that described originally, that the error in making a broad claim arose from inadvertence and mistake, and that laches in an application for a narrowed reissue creates no valid objection to its issuance. This statement presupposes that a comparison of the two patents shows that the invention of the narrowed claim is the same invention which the original patent indicated was the one which the patentee made, and which she intended to apply for and secure, for, as it is tersely stated in Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, a prerequisite to a valid

reissue is "that it shall be for the same invention as the original patent, as such invention appears from the specification and claims of such original."

In this case the lip, which was vaguely described in the original patent, was a part of the machine, but was not a part of the invention for which the patentee sought a patent. It was omitted in the statement of invention, the claim, the drawings, and the model. It was referred to in the specification as an incidental detail of the mechanism, but with no hint that it formed a part of the combination in which novelty consisted. In fact, the patentee's testimony very feebly supports the idea that the original patent did not contain her own theory of her invention. After the patent was granted, she made contracts and granted licenses. She procured and sold an English patent for the same machine, and for three years was engaged in an interference in the patent office of this country, in which one of the issues related to the original fifth claim. It is impossible to suppose that, if she had an idea that the lip belonged to her invention, she should not have discovered the omission during the repeated examinations of the patent which must have become necessary in her business relations. She never discovered an omission, but when the subject of the prospective litigation with the Wilcox & Gibbs Company was being examined, the expert for the complainant discovered that the Sidney S. Turner patent, No. 94,046, dated August 24, 1869, which contained no lip, stood in the way of any valuable novelty in the fifth claim. A reissue was therefore applied for, which not only introduced the lip into the combination, but which specified, or which was designed to specify, its distinctive office and character as a separator of the two strips of braid.

Under this state of facts, there is no room for the contention that the invention described in the original patent is not the invention which the patentee sought and intended to secure. It is said, however, that the error and mistake arose from the patentee's ignorance of the state of the art, and consisted in an erroneous supposition as to the true character of her invention. The combination of the new fifth claim is said to have been an advance upon the previous art, and an invention, in that, while the Sidney S. Turner patent, No. 133,553, dated December 3, 1872, showed a "front lip performing the function of the front lip described in the Carpenter reissue, it was not combined with a guide and presser foot, so as to be with them simultaneously and yieldingly movable to and from the work table," as in the Carpenter reissue; that this arrangement was novel and beneficial, and entitled her to a patent, but that her want of knowledge of the exact prior condition of the art led to a too broad claim, and that therefore a limitation of the claim in a reissue was valid. We are not prepared to admit that, assuming that a new claim simply diminished the breadth of the original claim, the state of facts which has been described would justify limitation in a reissue, after the patent had been in existence and under repeated examination for nine years, and after individuals and the public had ac-

quired adverse equities, which would be destroyed by a reconstruction of a void claim. This case does not call for a decision of that naked question.

While in this case it is true that the fifth claim contains four elements, while its predecessor contained but three, and therefore it is, in a certain sense, a narrower claim, that statement contains but half a truth. The remaining half is that the new claim is for a different and previously unrecognized invention. As the writer has previously, in substance, said upon another reissue, the new claim was not a different mode of describing that which was specified in the original patent,—it was not a limitation and narrowing of the invention which was described therein,—but it described an independent invention, and thereby, after an unreasonable delay, the patent was in fact enlarged. If the original patent did not indicate,—much more, if it did not hint at,—the invention of the reissue, as an invention, the grant of the reissue is not justified by the fact that the patentee actually made its invention, but by some mishap omitted to describe it in the original.

In the case of Parker & Whipple Co. v. Yale Clock Co., 123 U. S. 87, 8 Sup. Ct. 38, the valuable improvements which the patentee had actually made in clock movements were not described and not claimed in his original patent, but the defect was attempted to be corrected in a reissue. The patentee's and appellant's position was that the fact that the invention of the reissue was his actual invention was shown in the original model, and therefore that the new description simply corrected a misstatement in the original specification. It is true that it was a very bald case of an invention not disclosed in the original patent, but it was also a case in which the patentee had actually made a valuable invention, which his solicitor entirely mistook and therefore failed to describe. The supreme court was not controlled by the hardship to an actual but heedless inventor, but laid down a broad and general proposition, as follows:

"There is no warrant for the view that, ex vi termini, what was suggested or indicated in the original specification, drawing, or patent office model is to be considered as a part of the invention intended to have been covered by the original patent, unless the court can see, from a comparison of the two patents, that the invention which the original patent was intended to cover fairly embraced the things thus suggested or indicated in the original specification, drawings, or patent office model, and unless the original specification indicated that those things were embraced in the invention intended to have been secured by the original patent."

Under this just and, in view of adverse equities, equitable construction of the statute, in regard to reissues, the fifth claim of this reissue is invalid.

The decree of the circuit court is affirmed, with costs.