## MAITLAND v. GIBSON.

### (Circuit Court, E. D. Pennsylvania. June 19, 1894.)

1. PATENTS—COMBINATION—ELECTRIC-LIGHT FIXTURES.
   In view of the prior state of the art, there is no invention in a combination comprising an electric-light fixture supported from the piping of a house, and electrically insulated therefrom by an insulating joint.

2. SAME.
   The Stieringer patent, No. 259,235, for an "electrical fixture," *held* to be without patentable combination, as respects claims 1, 7, 8, and 9.

3. SAME—MECHANICAL UNION OF PARTS.
   The Stieringer patent, No. 294,697, for a combined gas and electric light fixture, *held* void as to claims 1, 2, 8, and 9, as showing a mere mechanical union of parts, without patentable combination.

This was a bill in equity by George Maitland against Alfred C. Gibson for infringement of certain patents for electric-light fixtures. On final hearing.

Dyer & Seeley and D. H. Driscoll, for complainant.
Hector T. Fenton, for defendant.

DALLAS, Circuit Judge. This bill charges the defendant with infringement of two patents granted to Luther Stieringer,—No. 259,235, dated June 6, 1882, for "electrical fixture," and No. 294,697, dated March 4, 1884, for "combined gas and electric light fixture."

Of No. 259,235, the claims involved are as follows:

"(1) A fixture for electric lights, supported from the piping of a house, and electrically insulated therefrom, substantially as set forth." "(7) In an electric-light fixture supported from the piping, the combination of an open and insulating joint connecting the fixture and pipe support, and an ornamental shell hiding said joint from sight, substantially as set forth. (8) In an electric-light fixture, the combination, with the main stem or arm and the distributing body carrying the lamp arms, of an open section, out through the sides of which the wires are passed from the stem, or from both the stem and the body, and a central support from such open section for sustaining ornamental or other parts, substantially as described. (9) In an electric-light fixture, the combination, with the main stem or arm and the distributing body, of the open section, outside of which the main and arm wires are connected, the central support from such open section for ornamental or other parts, and an ornamental shell hiding such connections, substantially as set forth."

The first of these claims, as expressed, comprises these three elements: A fixture for electric lights; the piping of a house; and means for electrically insulating the fixture from the piping. The language used in designating the last of these elements is, if literally accepted, inclusive of every kind of insulating device, but it is impossible to accord to the claim any such unlimited scope. The patentee, in his specification, fully and particularly described a particular insulating joint, and to it, I think, he must be restricted. He, of course, could not have intended to broadly assert that he was the first to discover or contrive that two conductive bodies might be mechanically united, and yet be electrically separated, nor is anything so preposterous now contended on his behalf. The position relied upon is that, regardless of lack of novelty of its elements, separately considered, this claim should be construed and supported as for a new combination, viz. of the fixture, of the pipe, and of any joint insulating the former from the latter. But this position is untenable, in view of the prior state of the art, and of the common knowledge of those who were conversant with it before this patent was applied for. The utmost which it can plausibly be contended that Stieringer did, which had not been precisely done before,— and the assumption of this, except for the argument's sake, the Ferryboat Exhibit repels,—was to insert an insulating joint between the piping of a house and a fixture for electric lights. This is the essence of his asserted combination. But similar insulation in analogous situations had been extensively practiced before, and apart from his peculiar joint, which it may be conceded was new, I am unable to perceive that his alleged invention amounts to anything more than electrically parting, while physically connecting, two pieces of metal, by a use of the familiar expedient of insulation, which might well be termed a double one but for the fact that the word "double" would not indicate the frequency of its previous employment. The learned counsel of the complainant insists that, to maintain this view of the first claim, it is necessary to hold "that insulation cannot be combined in a patentably novel combination," but I cannot agree with them. Such an organism may readily be conceived, in which insulation would figure as a potential and essential feature, but the plaintiff's arrangement is not

such an one. He found the gas or other grounded piping ready to his hand, and to this he attached a fixture, in which, in my opinion, there was nothing patentably novel. But such an attachment had often been made before, and therefore, if this was all he had done, it would scarcely be pretended that he had made any contribution to the art. Now, however, he perceived (evolved the "idea," it is said) that unless the fixture should be insulated from the pipe there would be liability to accidental electrical communication between them, and consequent hazard, and that to avert this danger an insulating joint should be inserted at the point of their union. Granting, for the immediate purpose, that he was the first to do this precise thing, can it be reasonably said that in doing it a new combination was created, of which the piping, the fixture, and the insulating piece were the elements? I think not. As well might the like claim be made in every other instance where it may be desired to bar the passage of electricity by resorting to the usual expedient of insulation; for, as is admitted, the fact that the complainant's joint is intended to act only in emergencies, and not to be constantly operative, is not material. But the patent laws do not countenance such claims. The design of those laws, as was said by Mr. Justice Bradley in Atlantic Works v. Brady, 107 U. S. 200, 2 Sup. Ct. 225, "is to reward those who make some substantial discovery or invention, which adds to our knowledge, and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device—every shadow of a shade of an idea—which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers, who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country without contributing anything to the real advancement of the arts. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens, and unknown liabilities to lawsuits, and vexatious accountings for profits made in good faith." This emphatic language is, in my opinion, clearly pertinent to the present case as I have endeavored to present it. But the proofs go even further, the construction and arrangement shown by what is known in the case as the "Ferryboat Exhibit" being, as it appears to me, absolutely in conflict with the claim under discussion, as it is construed by the complainant. Whether or not he has established an earlier date of invention for his joint alone need not be considered. As has already been said, his title to the specific joint may be admitted; but when he seeks protection for a combination, irrespective of the kind of joint comprised in it, it is not enough for him to show that his peculiar joint was invented prior to the conflicting use: he should show an earlier date for the combination alleged, and this he has utterly failed to do.

Claims 7, 8, and 9 of patent No. 259,235 are subsidiary, and,

in view of what has been said with especial reference to the first claim, may be briefly treated. By the seventh there is claimed an open and insulating joint, in combination with an ornamental shell hiding the joint from sight. But the defendant does not use the plaintiff's joint. An ornamental shell for covering an unsightly connection was not new, and the mere aggregation of these parts, in a manner not novel, and plainly obvious to a skilled workman, certainly does not constitute a patentable combination. The claim which has just been referred to (the seventh) relates to the upper portion of the fixture; the eighth and ninth to its lower end. The ninth differs from the eighth only in that it adds to the eighth an ornamental shell to hide certain connections. Both are combination claims, and each of them is subject to the same objections as the seventh. The elements are not new. The union proposed is but aggregation, not combination, and nothing is suggested with respect thereto which would not naturally have occurred to any one familiar with electric-light fixtures, and with the kindred gas-fixture art. The only possible novelty is not in the combination claimed,—upon which, of course, these claims must stand or fall, —but in the single feature, common to both, of an open-section distributing body; and as to this it is sufficient to say that the defendant does not use the plaintiff's construction.

Of patent No. 294,697, the claims which it is alleged the defendant has infringed are as follows:

"(1) A combined gas and electric light fixture, having separate arms for the electric lamps, and provided with wires passing to such arms, concealed by the ornamental covering of the gas pipe, and with wires extending through the electric-lamp arms, and connected with the main wires within the said ornamental covering, whereby the wiring is wholly concealed, substantially as set forth. (2) In a combined gas and electric light fixture, the combination of separate arms for the gas burners and electric lamps with the central supporting gas pipe stem or arm, the ornamental sleeve covering such central stem or arm, the conducting wires passing to the electric-lamp arms within such ornamental sleeve, and wires passing through such electric-lamp arms, and connected with the main wires within the ornamental covering of the fixture, substantially as set forth." "(8) In a combined gas and electric light fixture, made as a single structure, the combination of a central pipe for supplying the gas, surrounded by an ornamental covering sleeve, a canopy or shell adjustably secured upon the upper or inner end of said covering sleeve, and wires for supplying the electric current, located in the space between the pipe and ornamental covering sleeve, and entering such covering sleeve within the canopy or shell, substantially as set forth. (9) In a combined gas and electric light fixture made as a single structure, the combination of a central pipe for supplying the gas, surrounded by an ornamental covering sleeve, an insulating joint introduced in said pipe above the ornamental covering sleeve, and wires for supplying the electric current entering said covering sleeve below said insulating joint, substantially as set forth."

It is not necessary to further extend this opinion by dealing with these claims in detail. In his earlier patent, Stieringer had proposed "to use in electric light fixtures the forms of construction heretofore employed for gas fixtures;" in other words, to convert gas fixtures into electric-light fixtures. In this later patent his purpose was to adapt the old gas fixture for use both in gas lighting and in electric lighting,—to make of it a combined fixture. It was not requisite, in the first patent, to provide or retain any means

for the passage of gas; but in the second it was essential that there should be provision for conducting gas, as well as electricity, to the respective burners or lamps.    This difference in requirement made it necessary, of course, that the details of the combined fixture should differ somewhat from those of the fixture for electric lighting only.    But the changes and additions which were consequently made were structural in character, and in view of the state of the art, including the patentee's prior patent, did not involve invention. The wires were placed between the main pipe of the fixture and its already existing ornamental cover, instead of within the pipe itself; a screw to hold the canopy in place, but admitting of its being moved up and down upon the pipe covering, was provided; arms for the electric lamps were added, through which wires connected with the main wires were extended; and the added arms were fastened to the gas body, just as the old gas arms were, except that any opening from the wire conduit into the gas body was avoided by simply closing the end of the pipe, and placing the opening for the admission of the wires outside of that body.    This appears to me to be all that can be claimed to be covered by the second patent, so far as it is alleged that the defendant has infringed it, which was not distinctly disclosed in the first one; and careful consideration of this record, and of the arguments of counsel, has irresistibly brought my mind to the conclusion that what is here claimed to constitute invention entitled to protection under the second patent amounts to nothing more than the mechanical union—not combination—of the electric fixture of Stieringer's first patent, and others shown in the proofs, with an ordinary gas fixture.

The bill is dismissed, with costs.