MAITLAND v. B. GOETZ MFG. CO.

(Circuit Court of Appeals, Second Circuit. March 2, 1898.)

No. 90.

1. PATENTS—ELECTRIC LIGHT FIXTURES.
     The Stieringer reissue, No. 11,478 (original No. 259,235), for an electrical fixture, the gist of which consists in making use of metallic gas fixtures by introducing insulated conducting wires concealed within the fixture and capable of carrying the electric current, in supporting the fixtures by the gas pipes, and in placing a joint having metallic couplings and insulating material between the fixture and the gas pipe, so as to secure insulation from the grounded gas pipe, covers a patentable invention.

2. SAME—PRIOR INVENTIONS.
     Claim 1, Stieringer reissue, No. 11,478 (original No. 259,235), for electric light fixtures, was not anticipated by Edison patent No. 248,420, or other patents, nor by the "Ferryboat" fixture used in the Pennsylvania Railroad boat Jersey City.

3. SAME—REISSUE—LACHES.
     Where a patent was obtained June 6, 1882, held void by the circuit court June 19, 1894, and by the circuit court of appeals October 22, 1894, a reissue, dated March 11, 1895, is *held* not void by reason of lapse of time after the original was issued.

This is an appeal from an interlocutory decree of the circuit court for the Southern district of New York, in favor of the validity of claim 1 of reissued letters patent No. 11,478, dated March 12, 1895, and issued to Luther Stieringer, as assignor to George Maitland, for improvements in electrical fixtures.

The original Stieringer patent, No. 259,235, was dated June 6, 1882. Claims 1, 7, 8, and 9 of this original patent were found by the circuit court for the Eastern district of Pennsylvania to be invalid (Maitland v. Gibson, 63 Fed. 126), and its decree was affirmed by the circuit court of appeals for the Third circuit, upon the opinion of the circuit judge (11 C. C. A. 446, 63 Fed. 840). Thereupon the original patent was surrendered, the reissue now in suit was asked for and was issued, and its claim 1, the successor of claim 1 of the original patent, was adjudged to be valid by the circuit court for the Southern district of New York. Maitland v. Archer & Pancoast Co., 72 Fed. 660. Thereafter the present suit

was brought before the same court, and decided in the same way, no written opinion having been filed. The infringement of the claim by the defendant is not in dispute. The questions in controversy relate to the validity of the claim by reason of anticipation, or lack of invention, or the invalidity of the reissue. '

Charles E. Mitchell and Harry M. Brigham, for appellant.

Frederick P. Fish and Richard N. Dyer, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge (after stating the facts as above). Shortly before the year 1881, the means by which Edison's incandescent electric lamp could be introduced into houses and buildings which had theretofore been lighted by gas, and which were supplied with gas fixtures, began to be actively discussed by electricians and mechanics. The public was accustomed to gas fixtures. Much money had been expended in developing graceful and ornamental styles. The fixtures to be used exclusively for the new lamp were undeveloped, and those who proposed to try electricity as an illuminating agent desired to use the class of fixtures to which they were accustomed. The objection to such use was that, if the gas-pipe system was employed as a support for the two electrical wires, the gas-pipe outlet which connected with the ground would be a source of constant danger to the safety of the electrical appliances, and of the house itself. Underwriters against fire became alarmed, and finally demanded that where incandescent lights were attached to a gas fixture, or a metallic fixture having a ground connection, the wires should be separated 2½ inches from each other, or should be separated from the metal of the fixtures by some solid insulation. At this experimental stage of the new art, what may be called the "ceiling block system," which will be briefly described hereafter, and by which the chandelier was supported upon a wooden block upon the ceiling, seems to have been the best known method of utilizing gas fixtures. In March, 1881, the Edison Electric Light Company was fitting up its office at 65 Fifth avenue, and was causing to be constructed upon Mr. Edison's plans incandescent lamp appliances. The difficulties which were being encountered in one particular part of the building, which resulted in the annoying extinguishment of lights, were overcome by an insulating expedient which Stieringer, then one of the workmen, adopted. Thereafter the insulating joint as described in both the original and reissued patents was introduced by him into dwellings in New York and Chicago which were being wired for incandescent lamps. Subsequently the manufacturers who were making lamp fixtures for the Edison Company adopted the Stieringer system, and became licensees of his patent. Their example was followed by all other leading manufacturers. The underwriters accepted his method of insulation in lieu of their previous requirements, and the patent was acquiesced in until the Gibson litigation.

The gist of the invention consisted in making use of metallic gas fixtures by introducing insulated conducting wires concealed within the fixture, and capable of carrying the electric current to and

from the electric lamps; in supporting the fixtures by the gas outlets or gas pipes; and in placing a joint having metallic couplings and an intermediate section of insulating material between the upper end of each fixture and the end of the gas pipe, so as to secure complete insulation of the fixture from the grounded piping of the house. The utility of the invention is acknowledged by the universality of its use without special modification. The gas metallic terminals furnish a strong and convenient support, the insulation avoids the danger which would otherwise result from the use of grounded metallic piping, and the concealed wires are neither unsightly nor liable to abrasion.

The circuit court, in the Archer & Pancoast Case (72 Fed. 660), evidently did not suppose that reliance was placed by the defendant upon any of the antecedent patents as anticipations of the Stieringer device, but upon this appeal the question of novelty is presented, although their value, if any, is upon the defense of want of patentable invention. The Edison patent No. 248,420 described a swinging bracket, having two wires running through it, and a turning joint midway between the ends of the bracket. The theory of the defendant is that the two sections are electrically insulated at this joint. Upon the truth of this theory the experts differ, but it is certain that the patentee described as one mode of construction a single wire through the bracket, "the metal of the bracket and system of pipes being used for the other conductor"; and it is testified that, as actually constructed by Bergman & Co., Edison's fixture manufacturing company, the bracket had a metallic contact at the joint. Moreover, if there was any insulation, it was at a point where it would not beneficially accomplish the object of the Stieringer joint. The invention described in Edison's patent No. 248,424 was the original of the fixture which was made by Bergman & Co. under patent No. 263,103, and before they took a license from Stieringer. It had what was called a "base piece," or insulated block of wood, to which the wires led, and which had a central screw-threaded aperture to receive and support the stem of the chandelier. This large wall block supported the fixture, which was not hung from the gas pipe. Edison's patent No. 251,551 described a system of electric house lighting in which the main conductors enter the house, and at a point beyond the gas meter one of them is connected with the main gas pipe, "an insulating joint being formed in the pipe between this point and the meter, in order to prevent the current from passing through the meter to the ground. The other wire passes through the house to the various translating devices." Stieringer places the date of his invention prior to the date of the application for this patent. The Maxim patent, No. 247,086, was for "a chandelier for incandescent lamps, the two sides of which are insulated from each other, and each connected, respectively, with one terminal of a line wire and the contact strip of an incandescent lamp." The frame is hung from a ceiling block, and has no insulating joint between the stem of the chandelier and the gas pipe. Vansant's patent, No. 139,692, was for an electrical lighting attachment mounted upon the gas burner. Other patents

were introduced in evidence, and were remarked upon by experts, but we have mentioned all that were discussed in the defendant's brief, and neither of them, except Edison's patent No. 248,420, bears upon the question of anticipation. If the sections of Edison's bracket were electrically insulated at the midway joint, that patent was nearer than the other to the Stieringer device; but it must be remembered that the location of the insulating joint constitutes a very important part of the Stieringer invention. If the Edison fixture was supported by the gas pipe at the gas outlet, and no insulation was interposed until at the end of the stationary part of the bracket, it was practically a fixture noninsulated at the point where both the house and the fixture especially need protection.

The great reliance of the defendant is upon the "Ferryboat" fixture, so called, which was used in the boat Jersey City, of the Pennsylvania Railroad, in October, 1881. It had an insulating joint between the stem of the fixture and the support, which was made of a solid block of vulcanized fiber, at each end of which a brass thimble was fastened and riveted through the fiber. It was truly called by Judge Coxe "a one-wire system." One of the wires passed down from the ceiling outside the insulating joint and was soldered upon the pipe just below the joint. The metallic portion of the fixture thus became a part of the electric circuit, and a vehicle of danger. The device proved to be, in fact, a dangerous one, and was subject to the mishaps which were incident to its method of construction. It is by no means certain that this fixture anticipated the date of Stieringer's invention, but, if it did, its existence proves, rather than discredits, the originality and the patentability of the patented structure.

The lack of patentable invention is the next subject of adverse criticism of the reissue in suit. The history of the failures in the attempted art of electrical house lighting by the aid of gas fixtures, and the position of acknowledged success which was conceded to Stieringer's method, afford convincing evidence upon this branch of the case. Inventors of known repute and genius who had studied the subject, and who greatly desired to promote incandescent lighting, failed, and the patentee succeeded because he adopted the means which apparently had not occurred to them. The adverse decisions upon the original patent in Maitland v. Gibson, supra, are naturally dwelt upon by the defendant as of great importance. The complainant in that case was handicapped by the broad and vague terms of claim 1 of the patent, which was as follows: "A fixture for electric lights, supported from the piping of a house, and electrically insulated therefrom, substantially as set forth," and which made his invention to consist merely in the insulation of a fixture from the supporting gas pipe, with a very broad range of equivalents. The court considered that the claims described an unpatentable invention, and it is manifest from the opinion of Judge Dallas that he was not favorably impressed with the character of the invention however described, but his attention was not directed to its peculiarities as stated in claim 1 of the reissue, and

the decision is not, therefore, authoritative upon that claim, which is as follows:

"(1) A fixture for electric lights, constructed wholly or largely of metal, and provided with insulated conducting wires for conveying current to and from the lamps carried thereby, in combination with a joint or section having metallic coupling portions, and an intermediate section of insulating material electrically insulating the metallic coupling portions from each other, such joint being located at the upper or inner end of the fixture, and serving to electrically insulate the fixture from the grounded piping of a house by which it is supported, substantially as set forth."

The defendant's argument against the validity of the reissue is ingenious, but the facts are plain, and not unusual. The device of the specification was recognized as an invention by the manufacturers of lighting fixtures. They became licensees, and the patent was acquiesced in and respected for a number of years. The Gibson litigation showed that the principal claim was fatally loose in the opinion of both the circuit and appellate courts. It was reissued so as to make the claim correspond with and be limited to the description in the specification. The claim was narrowed, but narrowed to conform to the specification, and to state the same invention which it had described. The reissue is not one of the class of reissues of which Machine Co. v. Searle, 20 U. S. App. 301, 8 C. C. A. 476, and 60 Fed. 82, is an example, which pretend to narrow a claim, but which in fact describe an invention of an independent character, and one which the patentee either did not make, or omitted to describe, but which he now finds "lurking" somewhere in his structure. In the reissue in suit the specification was not varied. The part of a sentence which is added in the statement of the object of the invention states nothing which was not previously obvious. The narrowed and truthful reissue is, therefore, unobjectionable, except that it was belated; and upon the point of laches in obtaining a reissue the federal courts are now sensitive. Delay in this regard is obnoxious, because, as a rule, individuals and the public have acquired, during such delay, "adverse equities which would be destroyed by a reconstruction of a void claim." In this case, the adverse interests, whatever they are, arose after the termination of the Gibson litigation, and as soon as they came into being they were warned by the reissue of the existence of a patent which covered the attempted infringements. This reissue cannot be declared void by reason of the lapse of time after the original was issued, without establishing a new rule of law upon the subject of reissued patents. The decree of the circuit court is affirmed, with costs.