HORN & BRANNEN MFG. CO. v. PELZER.

(Circuit Court of Appeals, Third Circuit. December 21, 1898.)

1. PATENTS—PRELIMINARY INJUNCTIONS—EFFECT OF PRIOR DECISIONS.
Ordinarily, upon the question of the allowance of a preliminary injunction, the court should accept and follow the decision of a circuit court of appeals of another circuit sustaining and construing complainant's patent; but where it appears, in the second case, that defendant's device is manufactured under a patent antedating complainant's reissue, which it is alleged to infringe, and that 12 years elapsed between the date of the original patent, which was held void, and the application for the reissue, it is proper to give the questions involved an independent consideration before granting an injunction.

2. SAME—VALIDITY OF REISSUE—UNREASONABLE DELAY IN APPLICATION.
Complainant was granted a patent, which 12 years later was adjudged void, and an application was subsequently made for a reissue. Meantime, and prior to the adjudication, other patents had been granted for devices covered by the claims of the reissue, and such devices had been freely used by the public. Held, that after such delay the claims of the reissue could not be sustained.

3. SAME—CONSTRUCTION—IMPROVEMENT IN ELECTRICAL FIXTURES.
The Stieringer reissue patent, No. 11,478, for an improvement in electrical fixtures, which covers a device for attaching electric lighting fixtures

to gas pipes by an insulated connection, is void as to claim 1, as not supported by the claims and specifications of the original patent.

Butler, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

This is a suit in equity by William Pelzer against the Horn & Brannen Manufacturing Company for infringement of a patent. From an order granting a preliminary injunction (87 Fed. 869), defendant appeals.

Hector T. Fenton and Samuel Gustine Thompson, for appellant.

Richard N. Dyer and Frederick P. Fish, for appellee.

Before ACHESON, Circuit Judge, and BUTLER and KIRKPATRICK, District Judges.

ACHESON, Circuit Judge. This is an appeal from an interlocutory order of the circuit court for the Eastern district of Pennsylvania granting a preliminary injunction against the defendant below (the appellant here) in a suit in equity brought by William Pelzer against the Horn & Brannen Manufacturing Company to restrain alleged infringement of reissued letters patent to Luther Stieringer, No. 11,478, dated March 12, 1895, and granted upon an application filed December 21, 1894. The injunction was on the first claim only of the reissued patent. The original patent to Luther Stieringer was numbered 259,235, and was issued on June 6, 1882. The patent was for an improvement in electrical fixtures. One of the therein stated objects of the invention is "to utilize the convenient and efficient support afforded by the gas pipe of a house for sustaining fixtures for electric lights, and to provide means for preventing the formation of a ground connection when one conductor accidentally becomes electrically connected with some metallic part of the fixture." For the accomplishment of this object, the specification and drawings of the patent describe and show an open joint connecting the gas pipe projecting from the ceiling with the stem of a chandelier carrying electric lights. This joint is composed of an upper ring and a lower ring, some distance apart, connected by opposite arms or links, all cast in one piece. The upper ring is centrally screw-threaded and engages the end of the gas pipe. A block of insulating material rests upon the lower ring, and has a circular flange projecting down into the opening through this ring. On the upper side of the insulating block there is a depression in which rests a nut which engages the upper end of the chandelier stem, and thereby the stem is suspended; contact between the stem and the lower ring being prevented by the downwardly projecting circular flange of the insulating block. A washer of insulating material is put upon the chandelier stem, between the lower ring of the open joint and the ornamental covering which surrounds the stem, to complete the insulation of the chandelier from the gas pipe. No other device is described or shown for supporting from the house piping a fixture for electric lights suspended from the piping and electrically insulated therefrom. Fig. 6 of the drawings, indeed, shows an additional insulating block on one side of the arms or links of the open

joint between the upper ring and the nut; but that additional block, as appears from the specification, relates exclusively to wiring, and concerns neither the construction nor the operation of the joint itself. Fig. 8 of the drawings illustrates an application of the invention to a wall bracket. There a closed joint instead of an open joint is employed, and the insulation of the bracket arm from the gas pipe is effected by an insulating cup having an extension neck and a top washer.

The original patent has 11 claims, but the first claim only need be quoted. It reads thus: "(1) A fixture for electric lights, supported from the piping of a house and electrically insulated therefrom, substantially as set forth."

In the year 1891 a suit in equity upon the original patent was brought in the circuit court of the United States for the Eastern district of Pennsylvania. That suit involved the first claim. The case was heard on the merits, upon full proofs, and the bill was dismissed. Maitland v. Gibson, 63 Fed. 126. In delivering the opinion of the circuit court, Judge Dallas said:

"The first of these claims, as expressed, comprises these three elements: A fixture for electric lights; the piping of a house; and means for electrically insulating the fixture from the piping. The language used in designating the last of these elements is, if literally accepted, inclusive of every kind of insulating device, but it is impossible to accord to the claim any such unlimited scope. The patentee, in his specification, fully and particularly described a particular insulating joint, and to it, I think, he must be restricted. He, of course, could not have intended to broadly assert that he was the first to discover or contrive that two conductive bodies might be mechanically united, and yet be electrically separated, nor is anything so preposterous now contended on his behalf. The position relied upon is that, regardless of lack of novelty of its elements, separately considered, this claim should be construed and supported as for a new combination, viz. of the fixture, of the pipe, and of any joint insulating the former from the latter. But this position is untenable, in view of the prior state of the art, and of the common knowledge of those who were conversant with it before this patent was applied for. The utmost which it can plausibly be contended that Stieringer did, which had not been precisely done before,—and the assumption of this, except for the argument's sake, the 'Ferryboat Exhibit' repels,—was to insert an insulating joint between the piping of a house and a fixture for electric lights. This is the essence of his asserted combination. But similar insulation in analogous situations had been extensively practiced before; and apart from his peculiar joint, which it may be conceded was new, I am unable to perceive that his alleged invention amounts to anything more than electrically parting, while physically connecting, two pieces of metal, by a use of the familiar expedient of insulation, which might well be termed a double one but for the fact that the word 'double' would not indicate the frequency of its previous employment."

Elsewhere in his opinion the judge said: "But the defendant does not use the plaintiff's joint." The joints which the defendant in Maitland v. Gibson used had two screw-threaded metal coupling portions, electrically separated from each other by interposed insulating material. An appeal having been taken to this court from the decree of the circuit court in Maitland v. Gibson, dismissing the bill, we affirmed that decree upon the opinion of Judge Dallas, which we adopted as expressing our own views and conclusions. Maitland v. Gibson, 28 U. S. App. 53, 11 C. C. A. 446, and 63 Fed. 840. Our decision was announced on October 22, 1894. Shortly thereafter, namely, on

December 21, 1894, the patent was surrendered, and an application filed for a reissue. The reissue was allowed on March 12, 1895. We have here, then, the case of an application for the reissue of a patent made after an acquiescence of more than 12 years. There was the long interval of 12 years and 9 months between the date of the original grant and the date of the reissue.

In lieu of the first claim of the original patent, the following claim was substituted and allowed as the first claim of the reissued patent:

"(1) A fixture for electric lights constructed wholly or largely of metal, and provided with insulated conducting wires for conveying current to and from the lamps carried thereby, in combination with a joint or section having metallic coupling portions and an intermediate section of insulating material, electrically insulating the metallic coupling portions from each other, such joint being located at the upper or inner end of the fixture, and serving to electrically insulate the fixture from the grounded piping of a house by which it is supported, substantially as set forth."

The reissued patent was before the United States circuit court of appeals for the Second circuit in the case of Maitland v. Manufacturing Co., 29 C. C. A. 607, 86 Fed. 124; and that court sustained the first claim of the reissue, giving it a construction commensurate with its terms. That decision the court below thought it ought to regard as conclusive upon a motion for a preliminary injunction, in accordance with the established practice at circuit.

Now, we appreciate the great importance in patent litigation of uniformity of rulings by courts of concurrent jurisdiction, and, ordinarily, it is a commendable practice, upon a question of the allowance of a preliminary injunction, to accept and follow the decision of a circuit court of appeals of another circuit sustaining and construing a patent. Such practice has always prevailed in this circuit. American Bell Tel. Co. v. McKeesport Tel. Co., 57 Fed. 661; Edison Electric Light Co. v. Philadelphia Trust, Safe-Deposit & Ins. Co., 60 Fed. 397; Crump v. Light Co., 28 U. S. App. 325, 13 C. C. A. 40, and 65 Fed. 551. In the present case, however, the circumstances are so unusual that we are constrained to make an independent investigation as to the validity and scope of the first claim of this reissue, and to determine for ourselves whether the appellant, in the conduct of its business, has violated any of the lawful rights of the appellee.

It must be conceded that the first claim of the reissued patent, as compared with the terms of the original claim, seems to be narrowed, but this is in appearance merely. New limitations have been introduced, but most of them are immaterial. Thus, the calls for fixtures "constructed wholly or largely of metal," "insulated conducting wires," and a location of the joint "at the upper or inner end of the fixture," are unimportant additions. For all practical purposes, the claim is not narrowed at all. The joint of the combination of the first claim of the reissue is "a joint or section having metallic coupling portions and an intermediate section of insulating material, electrically insulating the metallic coupling portions from each other." This is sweeping language and far-reaching. Undoubtedly, the reissued first claim covers the joints which the defendant in Maitland v. Gibson, supra, used, and which were adjudged to be different from Stieringer's described joint and not to infringe the original patent. Again, this record contains

four patents granted between the date of Stieringer's original patent
and the date of the application for its reissue for insulating joints, each
of which comes directly within the terms of the first claim of the re-
issue.    These intervening patents are No. 291,731, to Charles H. Hinds,
granted on January 8, 1884, upon an application filed June 26, 1883;
No. 373,452, to Emil F. Gennert, granted on November 22, 1887, upon
an application filed July 14, 1887; No. 468,772, to Louis McCarthy,
granted on February 9, 1892, upon an application filed October 19,
1891; and No. 495,513, to Thomas J. Pierce, granted on April 18, 1893,
upon an application filed August 19, 1892.    Moreover, the defend-
ant's insulating joint, from the further use of which he has been re-
strained by the order appealed from, was constructed under and in ac-
cordance with the above-mentioned patent to Thomas J. Pierce of
April 18, 1893.    It further appears by the affidavits in this record
that for many years before the application for the Stieringer reissue
manufacturers had been making and putting up, and the public had
been freely using, electric fixtures supported by house piping, and in-
sulated therefrom by joints composed of two opposite coupling por-
tions and interposed insulating material.

Upon the facts disclosed by this record, it seems to us that, even if
the first claim of the reissue were otherwise sustainable, yet it must
be held to be invalid, in view of the intervening private and public
rights which have sprung up, and the unreasonable delay in the appli-
cation for the reissue.    Miller v. Brass Co., 104 U. S. 350; Ives v.
Sargent, 119 U. S. 652, 7 Sup. Ct. 436; Eby v. King, 158 U. S. 366,
374, 15 Sup. Ct. 972; Hubel v. Dick, 28 Fed. 132, 137; Peoria Target
Co. v. Cleveland Target Co., 7 C. C. A. 197, 58 Fed. 227; Machine Co.
v. Searle, 8 C. C. A. 476, 60 Fed. 82.

Speaking upon the subject of the delayed Stieringer reissue applica-
tion, the court in Maitland v. Manufacturing Co., supra, said:

"Delay in this regard is obnoxious, because, as a rule, individuals and the
public have acquired, during such delay, 'adverse equities which would be
destroyed by a reconstruction of a void claim.'    In this case, the adverse in-
terests, whatever they are, arose after the termination of the Gibson litiga-
tion, and as soon as they came into being they were warned by the reissue
of the existence of a patent which covered the attempted infringements."

Now, whatever may have been the proofs before the circuit court of
appeals for the Second circuit in that case, it is clearly established
by the record here that valuable adverse interests, including the inter-
est of this appellant in the Pierce patent, arose long before the
termination of the Gibson litigation.    Thus, it appears that these two
cases are distinguishable in a most important particular.

But there is another objection to the first claim of the Stieringer
reissued patent which, we think, is equally fatal.    The language im-
ported into the reconstructed claim—"a joint or section having metallic
coupling portions and an intermediate section of insulating material,
electrically insulating the metallic coupling portions from each other"
—is not to be found in the specification or claims of the original pat-
ent, and, indeed, does not appear in the reissued patent except in the
first claim.    How very wide the scope of this language is we have
already seen.    Now, the original patent neither describes nor ex-

hibits any insulating joint other than the above-mentioned open joint for a suspended fixture and closed joint for a side bracket. The patent' is absolutely silent as to any form or kind of insulating joint other than what is specifically described. Even the indefinite language employed in the original first claim is qualified by the closing words "substantially as set forth," which connect the claim with the specification. Neither of the joints described by Stieringer possesses any broad feature of novelty. Stieringer was by no means the first to provide insulation for electric fixtures, and all that he disclosed by his patent of 1882 was a specific construction. He did not describe, show, or suggest in his original patent a joint or connection consisting of metallic couplings insulated from each other by an intermediate section of insulating material. The joints used by the defendant in Maitland v. Gibson, the joints described in the Hinds patent of 1884, the Gennert patent of 1887, and the McCarthy patent of 1892, and the appellant's joint (made under the Pierce patent of 1893), all have two metal coupling portions, screw-threaded to unite the ends of two pipes, and one of them is screwed to the house piping and the other is screwed directly to the fixture stem, the two coupling portions being insulated from each other by a block or layer of insulating material placed between them. No such joint as this is described or shown in Stieringer's original patent; nor is such a joint described or shown in the reissued patent, although covered by the terms of the first claim of the reissue. In construction and principle, Stieringer's joint is an entirely different joint. The distinguishing insulating feature of Stieringer's open joint is the insulating block, having an annular flange, which is interposed between the lower ring of the joint and the fixture stem. In the case of the closed joint for a side bracket, the same result is obtained, in substantially the same way, by the insulating cup having the extension neck. Stieringer's insulation is not between two coupling portions, but between the fixture stem and the ring of the joint. These views are fully sustained by the affidavits of two practical and experienced witnesses, Mr. Horn and Mr. Brannen. Upon the record before us, we are entirely satisfied that the invention specified in the first claim of the reissued patent is not the same invention that was described and shown in Stieringer's original patent.

The order of the circuit court granting a preliminary injunction is reversed, and the cause is remanded for further proceedings.

BUTLER, District Judge. I dissent on the ground that the decision in Maitland v. Manufacturing Co. [29 C. C. A. 607], 86 Fed. 124, by the circuit court of appeals for the Second circuit, should control our decree. The issue and proofs were substantially the same there as they are here, and the defendant here was associated in the defense there. I cannot regard the effort made in the foregoing opinion to distinguish the cases as successful. The conclusion to reverse rests mainly on a contention that the decision in Maitland v. Manufacturing Co. is erroneous; and it was upon this contention that the appellant rested his case.