### BALL & ROLLER BEARING CO. v. F. C. SANFORD MFG. CO.

(Circuit Court of Appeals, Second Circuit. February 18, 1924.)

No. 215.

1. **Patents ⬤328—15,035, for roll-grinding machine, held valid as reissue; "laches."**

Heim reissue patent No. 15,035, for a roll-grinding machine, *held* to be a narrowed reissue, and valid as against claim of intervening rights on the ground of patentee's laches; "laches," as respects application for reissue, meaning delay without excuse.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Laches.]

2. **Patents ⬤36—Use of oppositely rotating wheel, to secure uniform rotation of rolls in roll-grinding machine, held invention.**

A roll-grinding machine, consisting of a grinding wheel having a relatively high surface speed and an oppositely rotating regulating wheel to secure a constant uniform rotation of the rolls along a determined path, *held* to show invention, as distinguished from mere mechanical skill.

3. **Patents ⬤328—15,035, for roll-grinding machine, as to certain claims of reissue, held valid and infringed.**

Claims of Heim reissue patent No. 15,035, for a roll-grinding machine, except claim 3, *held* valid and infringed.

4. **Patents ⬤82—Disclosure unaccompanied by claim held, as matter of law, dedication to public.**

Where the subject-matter of a patent in suit was disclosed in the specifications filed for an earlier patent, no claim being made in such earlier patent covering such subject-matter, there was, as a matter of law, a dedication of such subject-matter to the public.

5. **Patents ⬤328—1,210,936, claims 2-6, for wearing strip for roll-grinding machine, held not invention.**

Claims 2-6 of Heim patent, No. 1,210,936, for a feeding device for roll-grinding machine, calling for a carrier with a removal wearing strip with plurality of wearing surfaces, *held* not to show invention.

Appeal from the District Court of the United States for the District of Connecticut.

Suit in equity by the Ball & Roller Bearing Company against the F. C. Sanford Manufacturing Company. Decree for defendant (280

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Fed. 415) was affirmed on rehearing (291 Fed. 442), and plaintiff appeals. Reversed and remanded, with directions.

Suit is for the infringement of three patents, all issued to L. R. Heim, viz.: Reissue No. 15,035, for a "roll-grinding machine" (the original patent was 1,210,937, for which application was filed March 6, 1915, and patent granted January 2, 1917; application for reissue was filed September 8, 1920); No. 1,264,930, also for a "roll-grinding machine"; and No. 1,210,936, for a feeding device for roll-grinding machines. The court below held that claims 1, 2, 4, 6–10, 12, 13, 15, 18, 19, 20, and 21 of reissued patent 15,035 were invalid in view of the prior art; also that claims 1 to 4 of 1,264,930 were invalid, and claims 2 to 6 of 1,210,936 were not infringed.

The "rolls" which are to be ground in the patentee's machine are commercially speaking roller bearings; i. e., usually small bodies of hard metal, commonly cylindrical in shape, and intended to afford a support as nearly frictionless as possible for revolving axes. As put by the trial court, the patents relate to means "by which roller bearings are manufactured in large quantities, rapidly, accurately and at a minimum cost, and all of these characteristics are to-day vitally essential to a successful manufacture."

The specification of the reissue asserts that the essentials of the patentee's roll-grinding machine are: "A grinding wheel having a relatively high surface speed, a carrier for the rolls to be operated upon, and a wheel moving in the opposite direction having a relatively low surface speed, the action of which is to cause constant and uniform rotation of the rolls while being operated upon at a much lower surface speed than the grinding wheel. This wheel I term the regulating wheel, for the reason that it regulates the speed at which the rolls rotate while being operated upon."

The specification further explains that, when the patentee speaks of his wheels moving "in opposite directions," he means that they so rotate as to their active portions—i. e., the parts actually at any given instant engaged in either grinding or regulating; and it is further stated that by the phrase "a machine of the character described" is meant a machine adapted "automatically to grind the surfaces of a succession of short rolls."

Of the numerous claims in suit, and disposed of as above noted, the twelfth is selected by plaintiff as typical of the invention in its most general aspect. It reads as follows: "A machine of the character described, comprising a grinding wheel adapted to be rotated at a relatively high speed, a regulating wheel adapted to be rotated in the opposite direction at a relatively low speed, a carrier for rolls between said wheels, means adapted to permit adjustment of said carrier toward and from the surface of one of said wheels, means adapted to permit adjustment of one of said wheels toward and from the other, whereby the distance between their operative surfaces is varied, means adapted to vary the angular relation of said carrier and of the path of the operative surface of said regulating wheel, and thereby vary the rate of feed of rolls upon said carrier, means adapted to guide a succession of rolls into a position on said carrier between said means, and means adapted to receive said rolls as they pass out of the grip of said wheels, and guide them away from the wheels, the acting parts of said wheels being substantially parallel."

The fourth claim of No. 1,264,930 relates to the mounting of the grinding and regulating wheels, to the end that there may be a relative yielding of the wheels when an object to be ground is introduced between them, united with means for limiting the amount of said movement or yield. It reads as follows: "A machine for grinding cylindrical or like blanks comprising a peripheral grinding wheel rotating at a relatively fast speed, a peripheral regulating wheel adjacent said grinding wheel, and rotating at a relatively low speed in the opposite direction, said wheels being relatively yieldingly mounted, spring-controlled means for forcing said wheels toward each other, a blank support, and means for limiting the movement of said wheels toward each other."

The application for this patent was filed July 13, 1917, patent issued on May 7, 1918. The application is an original; i. e., it is neither divisional nor renewed. No. 1,210,936—i. e., the feeding device patent—is based on an appli-

cation filed contemporaneously with that now represented by reissue 15,035. The object is "to provide a simple, inexpensive, and durable feeding device especially adapted for use in connection with the type" or roll-grinding machines now represented by the above mentioned reissue. The sixth claim is thought fully to define the invention, and is as follows: "A roll-feeding device for grinding machines comprising a body, a carrier, and a removable wearing strip in the carrier having a plurality of wearing surfaces."

A discussion of the prior art and of the facts in the case will be found in the opinion. The appeal was taken by plaintiff.

Livingston Gifford, Robert S. Blair, and William T. Knieszner, all of New York City, for appellant.

William W. Dodge, of Washington, D. C., for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The suit being on three patents, it will be more convenient to consider them separately, first taking up reissue 15,035.

[1] This is attacked, first, as to validity, and, second, by asserting intervening rights, as was successfully done in Autopiano Co. v. American (C. C. A.) 222 Fed. 276. With the court below we are satisfied that this is a narrowed reissue, and that the patentee was not guilty of laches. When used in respect of applications for reissue, laches means delay without excuse; but enumerating valid excuses is merely dealing with facts—not creating precedents at law. It is enough therefore to point out that the facts at bar are quite within those in Specialty Co. v. Ashcroft (C. C. A.) 213 Fed. 35, Maitland v. Goetz, 86 Fed. 124, 29 C. C. A. 607, and Vandenburgh v. Concrete, 258 Fed. 143, 169 C. C. A. 138, very far within the Autopiano Case, supra, and Belber v. Seward (C. C. A.) 279 Fed. 82, and do not at all resemble those in Carpenter v. Searle, 60 Fed. 82, 8 C. C. A. 476, and Thomson-Houston v. Western Electric, 158 Fed. 813, 86 C. C. A. 73.

As for intervening rights, it is difficult to see how that doctrine can find place in litigation over a narrowed reissue, but in this case the disclosure was complete in the original specification, the reissued claims in suit embody the very language of the original seventeenth claim, that claim defined the essentials of Heim's invention in language perhaps technically loose, but very plain to a plain man, and defendant's president had personal warning from Heim before he had ground a roll, and, in so far as this record shows, before he had spent a dollar. We hold the reissue valid, and deny the claim of intervening rights.

[2, 3]. The art to which this patent generically belongs is that of producing bodies having a circular transverse cross-section, by grinding away irregularities and excrescences of raw material, and such material for this art is usually a cylindrical metal rod (however short) as drawn or forged. Specifically the machines of both parties, and of the patent in suit have to do with short and small hardened steel objects, technically called "rolls"; something for which the demand has of late years greatly increased because of the friction developed by the increasingly rapid rotation of many kinds of wheels in common use—e. g., those of cycles or motors of many varieties.

These rolls have long been made by "centering" the work in a lathe, or mounting it on a chuck. This is applying to the production of small

articles used in enormous quantities for machines comparatively inexpensive (e. g., motorcycles), the same slow and costly method used in making a shaft (e. g., for a steam propeller). To escape from this slow cost has been a recognized desideratum.

In reaching this goal, "centerless grinding" was not unknown before Heim, and that department of art was described, if not defined, by one of defendant's witnesses, thus: The machine is—

"known as a centerless grinder, by which is meant that it will grind a roll, pin, or other cylindrical object without first centering the roll, or making it necessary to have the rolls revolve upon their centers, or supported from their centers."

To remove superfluous material from a round piece of metal, by pressing it against a revolving abrasive wheel, was and is obviously cheap and rapid, provided the object to be ground could be given a steady revolution, and machines with such a wheel, and a "work rest," or appliance that presented the object to be ground to the wheel, so that the wheel itself both ground it and caused it to rotate, were devised and used. For an illustration, see Grant, 1,106,803. These machines, though sometimes doing good work, were unreliable. The object to be ground, by a wheel doing several hundred if not thousand R. P. M., was apt to be shot out like a bullet, as numerous witnesses state. The machines of the patent and of defendant operate, as do all machines, in obedience to a mechanical or physical law, regarding which this court must rely on the testifying experts, who in this instance are happily not at variance.

We are thus informed that, if two juxtaposed discs are revolved, whether in lateral or peripheral juxtaposition, each possessing an abrasive surface, and the discs be so shaped and positioned relatively to each other that, when both are revolved, there be furnished parallel operative faces, separated by a space of which the width is the diameter to which a roll is to be ground, then, if one disc be revolved at a rate relatively much higher than the other, and the parallel operative faces of the discs be traveling in opposite directions, when the roll to be ground is introduced between them, it follows that, if the predetermined (and controllable) path of travel between the operative faces is not radial, but across the radial lines of the slower moving disc, that disc will simultaneously cause the roll to revolve and advance across its own operative face, while the parallel face of the more rapidly moving one will grind the surface of the roll, which is thus presented to it by a comparatively slow, but regular, movement of rotation; and, finally, when the roll, having by the propulsive force of the slower wheel completed its travel across the operative parallel faces of both, comes to the end of the parallelism, the wider space produced by the beveling of the discs permits the now perfected cylinder or roll to drop by gravity only into the receptacle provided.

Of course any machine, operating under this physical law, requires adjustments and appliances, regulating, e. g., the direction of revolution of the two discs when at work, and permitting some "give" between discs, as the roll is naturally slightly larger on entrance than on exit; but the principle is as stated, and the question in this case is whether anybody before Heim devised a method of utilizing this prin-

ciple. Much less than being the first to utilize the principle would justify a patent, but on this record we state the query in its broadest form.

We pass infringement briefly, as it was disposed of below. There is nothing in the patent confining invention to ring wheels, or those peripherally juxtaposed; the principle applies to both, and there is no difference at all between producing nonradial travel of the roll by directing its path between wheels parallel in vertical planes, and tilting the slower or regulating wheel to produce the same result, when the juxtaposition is peripheral. Defendant has been vindicated below, not on noninfringement, not by a finding of anticipation, but by holding that in the light of the prior art, there was no invention in applying and utilizing the principle above stated. To this we are quite unable to consent.

The voluminous record at bar is the best (or worst) example recently presented to us of useless and misleading references to earlier patents and publications. It seems necessary to apply to patent litigation from time to time the maxim that one cannot make omelettes of bad eggs—no matter how many are used. One good reference is better than 50 poor ones, and the 50 do not make the one any better. We decline to consider, as of any assistance, all references to single wheel machines, because they do not and cannot embody the principle stated. They cannot do this, because it is a vital part thereof that there shall be a *regulating* disc or wheel; the work rest or other appliance which brought the roll into operative touch with the grinder did not even suggest that idea.

The case stands, as it did in the Patent Office, as an inquiry whether in the light of Lowman (British 12,190 of 1905) and French et al. (1,111,254) Heim showed invention as distinguished from mechanical skill. Lowman wished to clean and polish corks. Through a tube he fed between a sponge or brush disc slowly revolving in one direction and a wheel with a sandpaper face rapidly revolving in the other—the corks to be cleaned. The sandpaper wheel alone fed them along; the slow disc had no regulating power whatever, owing to construction. There was not, and could not be, any constant uniform rotation along a predetermined path, which is the feature of essential value in Heim's and defendant's machines.

French in 1911 (when he filed application) undoubtedly had the idea of abrasive wheels beveled and oppositely rotating. But he expected both his wheels to grind, and both do. His purpose was not to grind rolls, but to remove from long rods "the relatively thin surface or skin of more or less uncertain density or homogeneity" left on rods or bars after rolling or drawing. His wheels had to oppositely rotate at differing speeds, because, if they did not, no action would follow, and he arranged his wheels relatively to each other, not to do what these parties are doing, but to enable him to get grinding or polishing action on a rod which was fed through in guides, not propelled by a regulating wheel. The whole machine was designed diverso intuitu from that of Heim, and it was demonstrated by experiment at trial that it could not be made to produce rolls. That there was no anticipation by all this is, we think, admitted. Topliff v. Topliff, 145 U. S. 161, 12 Sup. Ct. 825, 36 L. Ed. 658. The question remains wheth-

er it was no more than the work of a skilled mechanic to advance from the "grinding and polishing machine" of French et al. to the "roll-grinding machine" of Heim.

The question would be more difficult, if the principle of operation characterizing Heim and the defendant were even dimly present in French; but his inventive concept did not contain any thought either of producing their result or obtaining his result by and through a regulating wheel. The practical business comment on this invention is conclusive. The French machine was used and known, but it moved no one to try it for rolls; we see no reason why it should do so; and rolls continued to be made by the centering method, or on single wheel machines, until Heim appeared.

The decree below is reversed as to this patent, and the claims in suit held valid and infringed.

[4] We now take up No. 1,264,930. This patent was applied for on July 13, 1917. It is admitted that the subject-matter of the second and sixth claims (the only ones in suit) was disclosed in the specification filed March 6, 1915, for the original of reissue 15,035. That original (1,210,937) was dated January 2, 1917, and no claim was made covering the subject-matter of these claims in suit.

As matter of law we are of opinion that the disclosure unaccompanied by any claim in Heim's earlier patent constituted a dedication to the public of all other devices, combinations, and improvements apparent from the specification of that earlier patent but not claimed. Jewell Co. v. Jackson, 140 Fed. 340, 72 C. C. A. 304. Cf. Loraine, etc., Co. v. General Electric, 202 Fed. 215, 120 C. C. A. 615. Further, we incline to think as matter of fact that plaintiff had used the substance of this improvement in public for more than two years prior to filing application for this patent. We express no opinion as to whether the substance of the claims under consideration could have been inserted in the reissue 15,035. The point at bar must be decided as it stands, viz.: It presents an original application, and no question of reissue, renewal or amendment. As to this patent, the result below is affirmed.

[5] The last patent in suit is No. 1,210,936. Plaintiff asserts that "the dominant feature of this patent is the wear strip," and infringement is said to exist because the defendant also uses a wear strip. Examination shows that the wear strip of plaintiff is a piece of material rectangular in cross-section, whereas that of defendant is circular. When one side of defendant's strip is worn by the passage of the rolls, its life is prolonged by turning it over. In the model furnished, the plaintiff's strip can be turned four times, and each side worn out in turn. Defendant's circular wear strip can be rotated, so as to present any convenient unworn fragment of the circumference for use.

We have carefully considered the scanty evidence on this subject, and are unable to avoid the conclusion that, given the theory of operation utilized by both parties at bar, the use of either a rectangular or circular wear strip is a device which would occur to any ordinary mechanic. We regard the machine as an invention of great ingenuity and almost primary importance, but in these wear strips we can perceive

no invention at all. As to this patent the result reached below is also affirmed.

The appellant, having been victorious in the major portion of this appeal, is allowed one-half costs in this court; the costs below are left to the discretion of the District Court.

Decree reversed, and cause remanded, with directions to enter a new decree in conformity with this opinion.