PELZER v. CITY OF BINGHAMTON et al.

(Circuit Court of Appeals, Second Circuit. April 4, 1899.)

No. 140.

1. PATENTS—CONSTRUCTION OF LICENSE.
   A license to make and sell a patented article during the term of the license. royalty to be paid on all sales made before its termination, though delivery should not be made till afterwards, by implication excludes the licensee from the right to make sales after the license has been terminated by his own election, though the articles sold were made during the term.

2. SAME—SUIT FOR INFRINGEMENT—INJUNCTION AGAINST CITY.
   A city which purchased patented combination gas and electric lighting fixtures for use in its city hall, after having been notified that they were being sold in infringement of the patent, and which took a bond to indemnify it against the result of litigation, has no equity, on the ground of being a public corporation, to claim exemption from the usual temporary injunction against using the fixtures pending a suit for the infringement.

Appeal from the Circuit Court of the United States for the Northern District of New York.

Richard N. Dyer, for appellant.

H. T. Fenton, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. This is an appeal from an order of December 16, 1898, of the circuit court for the Northern district of New York, denying a motion for an injunction pendente lite against the city of Binghamton's unlicensed use of reissued letters patent No. 11,478, to Luther Stieringer, as assignor to George Maitland, for improvements in electrical fixtures. The original patent was dated June 6, 1882. The validity of claim 1 of the reissue was sustained by this court in Maitland v. Manufacturing Co., 29 C. C. A. 607, 86 Fed. 124, and that question did not arise upon this appeal. In July, 1898, the city of Binghamton advertised for proposals for furnishing combination gas and electric lighting fixtures for its city hall. Proposals were submitted on July 19, 1898, by several competitors, one of whom was David J. Malane, the co-defendant, and the common council or its committee were informed that the use of his fixtures would be an infringement of the Maitland patent. The contract was given to him upon his furnishing a bond of indemnity against the result of lawsuits, and he entered into a written agreement with the city on August 5th. On September 7th formal written notice was given to the city by the plaintiff's attorney of the proposed suit and application for an injunction. There are 240 fixtures in the city hall, of which 123 infringe claim 1 of the reissued patent. The question of infringement was not argued by the defendant. The points made by the defendant were the impropriety of enjoining a municipal

corporation, which was a mere user, against the use of the fixtures in a public building for a short time, and the fact that the Horn & Brannen Manufacturing Company, which sold the fixtures to Malane, was a licensee under the patent, so far as these fixtures are concerned. A motion for an injunction was made, and was decided against the complainant, on November 15, 1898. A second motion was subsequently made on the same papers and on two additional affidavits which were apparently presented to explain the extent of the license claimed by Malane, and from the order denying that motion this appeal was taken.

The plaintiff does not manufacture the patented fixtures, but derives his profit from royalties from licensees. The licenses are of two kinds,—one to make the insulating joint, and another to make the whole fixture. The Macallen Company was licensed to make joints to be sold for use only on fixtures made by licensees. The Horn & Brannen Company was a licensee from April 1, 1896, to June 26, 1897, to manufacture, buy, and sell the patented electric fixtures at a royalty of 3 per cent. on the wholesale selling price of the entire fixture, including joints, and agreed not to manufacture insulating joints, but to purchase them from licensed manufacturers. The royalty on the joint was one cent per joint. Before the Horn & Brannen Company voluntarily terminated its license, it had bought from the Macallen Company the joints in question, and had fixtures on hand which had neither been sold nor ordered. After the Malane order, these fixtures were assembled, and the Macallen insulating joint was applied to each fixture. The claim of Horn & Brannen·is that, inasmuch as the joints were purchased and the fixtures were made during the existence of the license, they could be assembled and sold under the license after its cancellation. In order to determine the correctness of ·this position, reference must be had to the terms of the license dated April 1, 1896, and it appears that the licensee agreed to pay the licensor royalties on all the electric light fixtures which it sold, and that the license further provides as follows: "This royalty shall be paid only upon said sales and said business done by the party of the second part, the orders for which are taken subsequent to April 1, 1896; and, at the expiration or termination in any wise of this agreement, the said royalties shall be paid on all orders taken prior to such expiration or termination, whether the goods are delivered prior thereto or subsequent thereto." Royalties were to be paid only on sales upon orders taken after April 1st, and the agreement was not retroactive. They were furthermore payable on all deliveries upon orders made before its cancellation. The implication is very strong that after cancellation deliveries upon new orders must cease. It was not the intention of the agreement that goods could be accumulated by the licensee during the continuance of the license, and, although not ordered before its voluntary cancellation, could be subsequently sold in competition with other licenses, and such sales made after cancellation are unauthorized. We perceive no equity in favor of the city. Its officers were carefully informed of the prospect of litigation, took a bond to indemnify them against an untoward result, and other fixtures can be substi-

tuted with very little delay. The amount of the royalty on the infringing fixtures is not large, and the time during which the order for an injunction must be operative will be short, but we are to act upon the motion as it stood before the circuit court in December, 1898, when the question was of larger importance to the other licensees of the complainant. The order of the circuit court is reversed, with costs, and the case is remanded to that court, with instructions to grant the motion and issue an order of injunction pendente lite.