Coxe, District Judge.
This is an action in equity, based upon reissued letters patent, No. 10,600, granted to the complainant, as assignee of Mary P. C. Hooper, for improvements in machines for sewing straw braid. The reissue is dated May 26, 1885, 9 years, 4 months, and 22 days after the original, which bears date January 4, 1876. The defenses are—First, that the reissue, as a reissue, is void; second, insufficiency of description in specification and drawings; third, lack of novelty and invention; fourth, noninfringement.
The fifth claim only is involved. It is as follows: “(5) The combination of the presser foot, F, the lever guide, K, carrying the presser foot, the roller guide, E, and the lip, substantially as described.” The words “and the lip” do not appear in the fifth claim of the original. Thus a new element, the lip, has been added to the combination of the claim. In the original specification the inventor states as follows: “The invention further consists in the combination of a presser foot, a lever carrying the presser foot, and a roller guide.” This sentence appears in the reissue With the words “and a lip” added. The original says: “Said strips of braid are introduced under a front lip, and from thence under a presser foot, F, to and under a rising and falling back clamp, G.” For the first five words of this quotation the reissue substitutes the following: “The back strip of braid is.” Both original and reissue have the following statement: “The front lip, under which the braid is introduced, the guide wheel or roller, E, and the presser foot, F, are all carried by a lever, K,” etc. No other mention of the lip is found in the original patent. • It will be observed that the description of the lip is vague, shadowy and uncertain. With the single statement that the braid is introduced under a front lip which is carried by the lever the specification, on this subject, begins and ends. The lip is undesignated by a letter of reference, its location is not pointed out or its function described. There is absolutely nothing to indicate that it was to operate as “a separator” or perform the important functions attributed to it in the reissue. The lip nowhere appears in the drawings or in the model filed in the patent office. Indeed, it would be impossible to attach a lip to the machine shown in the model and drawings. A metal stock must be added to support the lip.
*811 The discrepancy between the original and the reissue can best be illustrated by placing diagrams of the two machines side by side:

It will be observed that the metal stock, carrying the lip, which is essential to the reissue, is entirely omitted from the original.
I am constrained to think that no one, however skilled in the art, could develop, from the specification, model and drawings of the original patent, the machine which is now put forward as an embodiment of the fifth claim of the reissue. The proposition that the omissions could be supplied by picking up suggestions found here and there in the prior art “is entirely too obscure and remote.” Ives v. Sargent, 119 U. S. 652, 663, 7 Sup. Ct. Rep. 436. The drawings of the original were' altered in the reissue by removing that part of the braid which projects beyond the table and which shows the strips of braid as being separated. At this point, beyond the table, a lip could not operate to separate the-braids or press them upon the bed plate. The drawings of the original were in accordance with the statement of the specification that the strips (not the back strip only) are introduced under a front lip. In other words, the drawings of the original conform to the description of the-original and are in direct conflict with the theory of the reissue that the- “ back strip of braid is introduced under a front lip.” The drawings as they appear in the reissue are not so manifestly inconsistent with that theory.
The claim of the original patent was, in the words of the complainant’s expert, “too broad.” In plain language, if not anticipated, it was restricted to such narrow limits by letters patent No. 94,046 to Sidney S. Turner, dated April 24, 1869, as to render it valueless. Those engaged in the business of sewing straw braid had, therefore, nothing to-fear from the fifth claim of the original. Complainant admits that a machine substantially like the alleged infringing machine was put on the market in the summer of 1877. There is no doubt.whatever that for at least five and a half years prior to the application for the reissue a large number of such machines were in use in various factories. These-machines were covered by patents issued subsequent to the original. For at least five years prior to the application for the reissue this use was known to the patentee. Concededly these machines could not be made to pay tribute under the original fifth claim. If they can be held *812 at all under the fifth claim of the reissue it is only by the introduction of the lip.
The excuses which are offered for the alleged errors in the original drawings, specification and model and for the long delay in applying for the reissue are, it is thought, insufficient within all the authorities. We have, then, the following facts: First, an original patent and a reissue nine years afterwards. Second, the introduction in the claim of the reissue of an element not found in the corresponding claim of the original. Third, the element thus introduced not found in the drawings or model of the original and but vaguely referred to in the specification. Fourth, drawings altered in the reissue so as not to be palpably inconsistent with the new claim. Fifth, adverse equities existing during a period of at least five years. It is thought that a reissue cannot be upheld in such circumstances. The mischief at which the reissue decisions strike is present here in all its objectionable features. The original claim was, practically, invalid. It protected nothing. The public had nothing to fear from that claim. In the light of this fact other parties built and used machines which, for aught that appeared in the original, they had a perfect right to make and use. For years they were permitted to do this, unmolested and without notice. They are now, after nine years’ delay, confronted with a new and‘‘different claim which makes unlawful that which was perfectly lawful before. The original claim being dormant and useless during this long period the attempt is now made to reconstruct from it a claim that is useful. The effort is. to make something out of nothing and in that sense the claim is broadened.
So much has been written on the subject of reissued patents that confusion often arises as to the grounds upon which they have been held invalid. Laches need not be present in all cases. I understand the law to be that a reissue is invalid—First, if its claim is broadened after unexeusable delay on the part of the patentee; and, second, if the claim covers a different invention from the one actually described and shown in the original. The statute (section 4916) provides for “a new patent for the same invention,” and there can now be little doubt as to the meaning of this phrase. What say the authorities? In Topliff v. Topliff, 145 U. S. 156,12 Sup. Ct. Rep. 825, the court, after reviewing the decisions, restates the rule as to the power to reissue. It also states the qualifications to the rule, the first of which is “that it [the reissue] shall be for the same invention as the original patent, as such invention appears from the specification and claims of such original.” In other cases the court uses the following language:
“The mistake of the patentee [or his assigns] seems to have been in supposing that he was entitled to have inserted in a reissued patent all that he might have applied for and had inserted in his original patent. The appellant produces on the argument exhibits tending to show that the patentee before obtaining his original patent had made and done all those things which are embraced in or covered by the reissued patent. If this were true, *813 it would be nothing to the purpose. A reissue can only be granted for the same invention which was originally patented. * * * Hence there is no safe or just rule but that which confines a reissued patent to the same invention which was described or indicated in the original.” Manufacturing Co. v. Ladd, 102 U. S. 408.
“If he [the patentee] was the author of any other invention than that which he specifically describes and claims, though he might have asked to have it patented at the same time, and in the same patent, yet if he has not done so, and afterwards desires to secure it, he is bound to make a new and distinct application for that purpose, and make it the subject of a new and different patent. * * * The law does not allow them [patentees] to take a reissue for anything but the same invention described and claimed in the original patent.” James v. Campbell, 104 U. S. 356.
“We are of the opinion that the present reissue is invalid so far as the first claim of it is concerned because it is not for the same invention as the original patent, and is therefore within the express exception of the statute.” Freeman v. Asmus, 145 U. S. 226, 241, 12 Sup. Ct. Rep. 939.
“The reissue is not only for a broader claim made many years after the original was granted, but it is for a different invention. ” Matthews v. Machine Co., 105 U. S. 54.
“There was no mistake in the wording of the claim of the original patent. The description warranted no other claim. It did not warrant any claim covering bands not short or sectional. The description had to be changed in the reissue, to warrant the new claims in the reissue. The description in the reissue is not a more clear and satisfactory statement of what is described in the original patent, but is a description of a different thing, so ingeniously worded as to cover collars with continuous long bands and which have no short or sectional bands.” Coon v. Wilson, 113 U. S. 268, 5 Sup. Ct. Rep. 537.
“We are also of opinion, however, that the reissue is void on the other ground, viz., that it contains new matter introduced into the specification, and that it is not for the same invention as that described in the original patent. * * * In this view, therefore, the case comes within the rule as stated in Coon v. Wilson, 113 U. S. 268, 277, 5 Sup. Ct. Rep. 537. There, as here, the lapse of time and laches based upon it were considered immaterial, because the reissue patent was for a different invention from that described in the original.” Ives v. Sargent, 119 U. S. 652, 7 Sup. Ct. Rep. 436.
“The question of laches is perhaps immaterial, for the reissue of the Campbell patent was not for the same invention described and claimed in the original.” Hartshorn v. Barrel Co., 119 U. S. 664, 7 Sup. Ct. Rep. 421.
“There is no evidence of any attempt to secure by the original patent the inventions covered by the first eight claims of the reissne, and those inventions must be regarded as having been abandoned or waived, so far as the reissue in question is concerned. In other words, those eight claims are not for the same invention which was originally patented. ” Parker & Whipple Co. v. Yale Clock Co., 123 U. S. 87, 8 Sup. Ct. Rep. 38.
“And as a reissue could only be granted for the same invention embraced by the original patent, the specification could not be substantially changed, either by the addition of new matter or the omission of important particulars, so as to enlarge the scope of the invention as originally claimed. * * * The evident object of the patentee in seeking a reissue was not to correct any defects in specification or claim, but to change both, and thus obtain, in fact, a patent for a different invention. This result the law, as we have seen, does not permit. ” Russell v. Bodge, 93 U. S. 460.
“It seems to us impossible to read this section [4916] carefully without coming to the conclusion that a reissue can only be granted for the same inven *814 tion which formed the subject of the original patent of which it is a reissue. * * * By .‘new matter’ we suppose to be meant ‘new substantive matter,’ such as would have the effect of changing the invention, or of introducing what might be the subject of another application for a patent. The danger to be provided against was the temptation to amend a patent so as to cover improvements which might have come into use, or might have been invented by others, after its issue.” Powder Co. v. Powder Works, 98 U. S. 126,137, 138.
Mr. Walker sums up a review of the authorities thus:
“Therefore no reissue claim can stand any longer upon a model alone, nor even alone upon a drawing of an original; and indeed neither models, drawings nor descriptions, nor all of them together, can support a reissue claim, except when the description in the original letters patent shows that the invention covered by that claim was intended to be secured in the original. ” Walk. Pat. § 233.
These quotations, which have perhaps been multiplied unnecessarily, leave no room for doubt that unless the court can find that the invention of the reissue is described as the invention in the original, and that the patentee intended to secure it as his invention in the original, the reissue is invalid,—it is not for the same invention. The question is ¡not what the patentee actually invented, but what he said about it in the original, and if it appears from the original that the invention of the reissue was an afterthought not described or intended to be claimed, the reissue falls. Tested by this rule I cannot think that the patentee described and intended to secure in the original the invention of the fifth •claim of the reissued patent. Everything points to a different conclusion. The model, the drawings, the statement of invention, the description of the combination and the claim, all point to the inference that it was not the purpose of the inventor to include the lip in the combination. The omission from the model if it stood alone might be regarded as a mistake; the drawings, the description and the claim, considered separately, might be treated as mistakes, but it is almost in•credible that four mistakes of this character should occur and continue unnoticed for nine years. If we start with the supposition that the invention was what the patentee declared it to be in the original, we find model, drawings, description and claim in perfect harmony. The model ¡shows a combination of three elements. So do the drawings. The description expressly states that the invention consists in such a combination, and the claim claims it. If, on the other hand, the attempt is made to establish the proposition that the invention of the original was what the patentee declares it to be in the reissue, we find the path beset with difficulties, contradictions and inconsistencies at every turn. Success in this undertaking can only be reached by a resort to the most heroic measures. Delays and tergiversations must be excused, omissions must be supplied, alterations made and a series of plain and consistent statements must be pronounced to be mistakes. It is, therefore, thought that the reissue is not for the same invention as the one actually •described in the original.
*815 The able brief filed by the complainant contains the following frank and clear statement:
“If the fifth claim of the Carpenter reissue were broader than any claim of the original patent or covered a machine that was not covered by a claim in the original patent, under the decisions of the supreme court it would probably not be valid, but this is not the case with the fifth claim of the Carpenter reissue. ”
This is unquestionably a correct expression of the law. If the claim has been broadened after nine years’delay the reissue is void.
I understand thé case of Hubel v. Dick, 28 Fed. Rep. 182, as authority for the proposition that where a broad invalid claim has been permitted to remain unchanged for a long series of years, until adverse equities have arisen, and a reissue is granted with a new claim, which, though for a larger combination, seeks to hold as infringements machines which have been lawfully made for years, the reissue is broadened and is therefore void. Adding a new element in such circumstances makes an independent invention and thus, in legal contemplation, broadens the claim. At page 137 the court says:
“But it is said that the sixth claim of the second reissue is narrower than the corresponding claim of the first reissue, and, therefore, it is not within the scope of the cases which have been cited. It is, in a certain sense, a narrower claim, inasmuch as it contains a larger number of elements; but it describes a different invention. The claim is not a different mode of describing that which was specified in the first reissue, and is not a limitation and narrowing of the invention which was described therein, but it describes an independent and important invention, and thereby, after a lapse of five years, the patent was enlarged. The principles in regard to the invalidity of reissues, when unreasonably delayed, have become so well established that they cannot be successfully avoided by adding, after an unreasonable delay, in a second reissue, another element to a combination described in a void claim in the first reissue, the last added element making a different and previously unclaimed, invention.”
For these reasons I am constrained to hold the fifth claim invalid.
But assume that the foregoing propositions are wrong; assume that the invention of the reissue is described in the original and that the claim of the reissue is narrower; how then stands the case? It is thought that no one can read the argument in Miller v. Brass Co., 104 U. S. 350, and the other decisions which follow it, without being impressed with the conviction that the injustice which the court sought to correct was the attempt to levy tribute upon innocent parties who did not infringe the original patent and who had a right to feel themselves secure after long years of unmolested use. It cannot be doubted that any reissue which permits this wrong is within the mischief of these decisions. This case is in some respects sui generis, but there can be no doubt that, if sustained, the reissue will accomplish the very wrong which has been so sharply denounced by the supreme court. If an inventor, holding a patent with avoid claim,has slept upon his rights for years until other rights have become fixed, what possible difference can it make, upon principle, whether he invades those rights and secures an *816 inequitable advantage by means of a broader claim or a narrower claim? The complainant here seeks to do by a narrower claim (assuming it to be narrower) precisely what other complainants have vainly sought to do by an expanded claim. It cannot be doubted that the attempt is as inadmissible in the one case as in the other. In both cases the patents, after years of acquiescence, and in the light of subsequent events, are manipulated to grasp devices which the originals could not lay hold of.' To permit this to be done in any case violates the spirit of the law.
As these views dispose of the case it is not necessary to consider the other defenses. The bill is dismissed, with costs.