CHICAGO RY. EQUIPMENT CO. et al. v. PERRY SIDE BEARING CO. et al.

(Circuit Court, N. D. Illinois, E. D. January 9, 1909.)

No. 28,674.

1. PATENTS (§§ 140, 144*)—REISSUES—VALIDITY—PRESUMPTIONS FROM GRANT.
    On an application for a reissue of a patent, where it is sought to broaden the claims, the burden rests on the applicant to clearly establish inadvertence, accident, or mistake; but the grant of the reissue raises a presumption that proper ground therefor was shown, and the courts will not review the decision of the Commissioner, unless unsupported by the record.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 205, 216; Dec. Dig. §§ 140, 144.*]

2. PATENTS (§ 147*)—REISSUES—VALIDITY.
    Unless the court can find that the invention of a reissue is described as the invention in the original patent, and that the patentee intended to secure it as his invention in the original, the reissue is not for the same invention, and is invalid.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 220; Dec. Dig. § 147.*]

3. PATENTS (§ 328*)—VALIDITY OF REISSUE—SIDE BEARING FOR CARS.
    The Wands reissue patent, No. 11,611 (original No. 533,763), for a side bearing for railway cars, granted on an application made 23 months after

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the issue of the original patent, is void, both on the ground that the claims are a departure from and broader than those of the original, and also for anticipation in the prior art.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

**4.** PATENTS (§ 328*)—VALIDITY—ABANDONMENT OF INVENTION.

The Wands patent, No. 590,286, for a side bearing for railway cars, is void on the ground that such features of the device as disclose invention were abandoned to the public.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*

Abandonment of invention, see note to Hayes-Young Tie Plate Co. v. St. Louis Transit Co., 70 C. C. A. 6.]

**5.** PATENTS (§ 328*)—INFRINGEMENT—SIDE BEARING FOR CARS.

The Wands patent, No. 694,503, for a side bearing for railway cars, discloses invention in the feature designed to prevent the accumulation of dust in the structure, and is valid; also *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

**6.** EQUITY (§ 330*)—MULTIFARIOUSNESS OF BILL—WAIVER.

The defense of multifariousness is one for the discretion of the court, and will not be allowed to prevail in a case in which the testimony has been taken and final argument made.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 663; Dec. Dig. § 330.*]

**7.** PATENTS (§ 328*)—INFRINGEMENT—SIDE BEARING FOR CARS.

The Huntoon patent, No. 694,549, for a side bearing for cars, was not anticipated, and discloses invention; also *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

**8.** PATENTS (§ 287*)—LIABILITY FOR INFRINGEMENT—OFFICER OF CORPORATION.

An individual who owns practically all of the stock of a corporation and personally controls and directs its action may be held jointly liable with it for infringements of a patent by the corporation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 459; Dec. Dig. § 287.*]

In Equity. On final hearing.
See, also, 170 Fed. 982.

Jesse A. Baldwin, Paul Bakewell, and F. R. Cornwall, for complainants.
Offield, Towle & Linthicum and Albert H. Graves, for defendants.

KOHLSAAT, Circuit Judge. The bill herein seeks to enjoin defendants from infringing    (1) claims 4, 5, and 6 of reissue patent No. 11,611, granted to John C. Wands June 15, 1897; (2) claims 1 and 3 of patent No. 590,286, granted to said Wands June 15, 1897; (3) claims 23, 24, 25, 26, and 27 of the patent No. 694,503, granted to said Wands March 4, 1902; (4) claims 17, 18, 19, 20, 21, 22, 23, 24, and 25 of patent No. 708,601, granted to said Wands September 9, 1902; (5) claims 1 to 11, inclusive, of patent No. 694,549, granted to C. F. Huntoon March 4, 1902—all having reference to side bearings for railway cars.

The reissue patent above named is based upon the application filed November 21, 1894, for patent No. 533,763, granted to John C. Wands for a side bearing for railway cars, June 15, 1895, and the four claims of that patent are made a part of the reissue patent as claims 7, 8, 9,

and 10 thereof. The substance of the matter claimed in the reissue, so far as is material herein, is the centering or spring device. An inspection of the file wrapper in patent No. 533,763 discloses the fact that all of the claims asked for were rejected by the examiner except those calling for this resilient centering device.

The application for the reissue was filed December 31, 1896. In this latter application the inventor, Wands, states: That letters patent granted to him No. 533,763, on February 5, "1896," are inoperative or invalid for the reason that the specification thereof is defective or insufficient, and that such defect or insufficiency consists particularly in this: That the claim is not coextensive with the statement of invention, which invention, as stated in lines 16 to 22, page 1, of the printed specification of said patent No. 533,763, is as follows:

"My invention consists in a series or nest of anti-friction rollers carried by a roller frame and operating directly upon the bearing-plate that is bolted to the top bolster, and various other novel features of construction, combination, and arrangement of parts, hereinafter described and claimed."

That said errors arose from inadvertence, accident, or mistake, and without any fraudulent or deceptive intention on the part of deponent. That the omissions sought to be supplied are: (a) A claim for the combination with a bolster and a bearing-plate of a series or nest of anti-friction rollers carried by a roller frame, and operating directly upon the bearing-plate that is bolted to the top bolster; (b) a claim for a side bearing for railway cars comprising a series of anti-friction rollers arranged in concentric rows, the rollers of the adjacent rows overlapping; (c) a claim for the combination, with a movable anti-friction device for the side bearing of a railway car, of a spring for restoring said anti-friction device to its normal position when released by the tilting of the body of the car.

The applicant further charges that his attorneys, being misled by the opinion of the Commissioner, accidentally omitted to append claims coextensive with the invention, and that he, being unversed in the language necessary to secure his invention, believed that it was fully covered, until a month last past, when he was informed by persons skilled in the art that such was not the case.

Defendants insist the reissue patent is void because (1) there was no true accident, inadvertence, or mistake; (2) the patentee was guilty of laches; (3) the reissue patent is for a different invention from the original.

It will be observed that 23 months intervened the grant of letters patent in No. 533,763 and the application for a reissue thereof. The record discloses no question of intervening rights, nor of equitable estoppel, the presence of which seems to have generally been deemed a matter to be considered, especially with reference to laches, although it was held in White v. Dunbar, 119 U. S. 47, 7 Sup. Ct. 72, 30 L. Ed. 303, that:

"The existence of intervening rights adds nothing to the illegality of a reissue which has been expanded to cover more than the original patent sought to cover. That is deduced from general principles of law as applied to the statutes authorizing reissues and affecting the rights of the government and the public."

It seems to have been with some reluctance that the courts have construed the reissue statute so as to permit the enlargment of claims. Rev. St. § 4916 (U. S. Comp. St. 1901, p. 3393), provides for a reissue of a new patent for the same invention (1) whenever any patent is inoperative or invalid by reason of a defective or insufficient specification; (2) or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention.

In Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783, the court, reasoning from the history of the statute, says:

"It is natural to conclude that the reissue for the latter purpose [making a claim broader] was not in the mind of Congress when it passed the law in question."

Discussing the subject further, the court says:

"But by a curious misapplication of the law it has come to be principally resorted to for the purpose of enlarging and expanding patent claims."

In Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658, the court reviewed Miller v. Brass Co., and said:

"It is a mistake to suppose that that case was intended to settle the principle that under no circumstances would a reissue containing a broader claim than the original be supported. We have no desire to modify in any respect the views expressed in that and subsequent cases with regard to the validity of reissues."

In Freeman v. Asmus, 145 U. S. 226, 12 Sup. Ct. 939, 36 L. Ed. 685, it was sought by reissue—

"To construe the first claim so as to cover any kind of a blast furnace with a closed breast, having a slag discharge-opening cooled in any way, or to any extent, by water. There is nothing in the original specification which indicates that any such claim was intended to be made in the original patent. On the contrary, the whole purport of that specification shows that it was intended to claim only a slag discharge-piece or cinder-block constructed and attached in a specific manner."

The court held that the reissue was not for the same invention as the original patent, and that:

"There is nothing inconsistent with the foregoing views in our decision in Topliff v. Topliff."

From these and other decisions, it seems clear that the burden of showing mistake is upon the applicant in all cases involving the broadening of a claim, and must be plainly established. There is a line of cases holding that the grant of the reissue patent constitutes a prima facie presumption of its validity. Walker on Patents (4th Ed.) § 492; Clark v. Wooster, 119 U. S. 326, 7 Sup. Ct. 217, 30 L. Ed. 392; Whitcomb v. Coal Co. (C. C.) 47 Fed. 655.

In Topliff v. Topliff it is said that the court will not review the decision of the Commissioner as to inadvertence, accident, or mistake, "unless the matter is manifest from the record." This language is repeated in substance in Hobbs v. Beach, 180 U. S. 395, 21 Sup. Ct. 409, 45 L. Ed. 586, and may be deemed to express the final conclusion of the Supreme Court in the subject; so that, notwithstanding the

burden which is cast upon the complainant to maintain his allegation of accident and mistake in this cause, the defendants must take the onus of showing that the facts of record do not sustain the presumption arising from the grant—which is no greater than that arising from any grant of a patent.

It is defendants' contention that it appears from the record that no mistake occurred in the proceedings resulting in the grant of Wands' original patent, No. 533,763, and that the reissue is for an invention different from that of the original patent. This involves a comparison of the two. The presumption arising from the grant of the reissue attaches only to the existence of accident, mistake, and inadvertence, and not to the identity of the invention.

All of the four claims of Wands' original patent call for a peculiar arrangement of anti-friction rollers. Claims 1, 2, and 3 in terms set out nested or alternated rollers, and describe their mounting. Claim 4 does not contain the terms "nested" or "alternated," but disclosed a device which of necessity includes rollers nested or alternated. Each of said claims includes the centering device. Claims 4 and 5 of the reissue patent in suit, and each of them, would, upon their face, and unless limited by the specification, read upon any side-bearing device for railway cars employing a movable anti-friction element combined with a centering spring. Claim 6 varies from claims 4 and 5 only in the addition of the frame and in locating same between the top truck-bolster and the transom of the car-body. They are broad enough to cover each of the claims of the original patent. Thus it is sought by the language of the reissue claims to broaden the limited claims of the original patent into claims covering the whole field of movable anti-friction side bearings for railway cars, of which spring-restoring devices are an element. That the reissue is broader than the original cannot be gainsaid. It seeks to bring within the monopoly of its patent side bearings, not apparently in mind at the time of filing the original application. "My invention," says the patentee (page 1, line 9) "relates to anti-friction side bearings for railway cars; the object of my invention being to provide means that will present a larger bearing surface than any of the devices now in use, without cutting, sawing, or altering the bolster or transom in the present construction." Manifestly, the spring-centering element had nothing to do with the enlargement of the bearing surface. It will be seen that, of the ten claims of the original application, only three included the centering spring. The others were rejected, and claim 1 was saved by adding the spring feature. In the other six claims, Wands was seeking to cover his wider bearing surface only, and evidently did not consider the retracting feature an essential element to that end. It can hardly be claimed that the original patent was not a complete device. It was operative, just as completely as that of the reissue patent. For all that Wands was seeking, it was in itself a finished side-bearing arrangement. Later he thought he could just as well claim the resilient centering device and make it apply to every anti-friction side bearing which is centered by a spring. Undoubtedly he made the mistake of not claiming the larger invention, if it be such,

in his first application; but this is not the mistake the statute and the courts have in mind. In Campbell v. James, 104 U. S. 356, 26 L. Ed. 786:

"When a patent fully and clearly, without ambiguity or obscurity, describes and claims a specific invention, complete in itself, so that it cannot be said to be inoperative or invalid by reason of a defective or insufficient specification, a reissue cannot be had for the purpose of expanding and generalizing the claim, so as to make it embrace an invention not described and specified in the original."

Approving the language of Justice Grier in Burr v. Duryee, 1 Wall. 531, 17 L. Ed. 650, in which the court says:

"The surrender of valid patents and the granting of reissued patents thereon, with expanded or equivocal claims, when the original was clearly neither inoperative nor invalid, and which specification is neither defective nor insufficient, is a great abuse of the privilege granted by the statute and productive of great injury to the public. This privilege was not given to the patentee or his assignee in order that the patent may be rendered more elastic or expansive, and therefore more available for the suppression of all other invention."

In Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 42, 14 Sup. Ct. 30, 37 L. Ed. 989, it appears that the reissue was made, among other things, to cover a device containing one element, a mortise, not claimed in the original and surrendered patent. The court says this "clearly operated to broaden and expand the original claim," and holds the reissue unwarranted. Says the court:

"It is settled by the authorities that, to warrant new and broader claims in a reissue, such claims must not be merely suggested or indicated in the original specification, drawings, or models; but it must further appear from the original patent that they constitute parts or portions of the inventions which were intended or sought to be covered or secured by such original patent."

In Hobbs v. Beach, 180 U. S. 394, 21 Sup. Ct. 414, 45 L. Ed. 586, the reissue patent was attacked upon the ground that the original patent was neither inoperative nor invalid by reason of any defective or insufficient specification. The reissue had been applied for only a few weeks after the original issue, and, as the court says, "was issued merely to correct, as it would seem, an obvious error in one of the drawings." The court holds that:

"To justify a reissue it is not necessary that the patent should be wholly inoperative or invalid. It is sufficient if it fail to secure to the patentee all of that which he has invented and claimed."

In Huber v. Nelson, 148 U. S. 270, 13 Sup. Ct. 603, 37 L. Ed. 447, the court held the reissue invalid because it left out one of the elements of the original claim, to wit, a flushing chamber. Says the court:

"We think that, on all the facts of this case, no one of the claims of the reissue can be construed as valid in leaving out the flushing chamber as an element of the combination, inasmuch as every claim of the original patent contained it."

It was further held in this case:

"That the failure to claim the particular combination not claimed in the original patent, but claimed in the reissue, was not due to any such inadvertence or mistake as would authorize the claiming of it in the reissue, and that the failure to claim such combination originally occurred under such

circumstances and was accompanied with such full knowledge of all material facts as to amount to an abandonment of that particular combination to the public."

This was reviewed and approved in Olin v. Timken, 155 U. S. 141, 15 Sup. Ct. 49, 39 L. Ed. 100.

An examination of the foregoing cases, and a large number of other cases decided by the Supreme Court and by the various Courts of Appeal and Circuit Courts, leads plainly to the conclusion so well stated by Judge Coxe in Carpenter Straw Sewing Machine Co. v. Searle (C. C.) 52 Fed. 809, 814, and approved by the Circuit Court of Appeals in 60 Fed. 82, 8 C. C. A. 476, viz.:

"That unless the court can find that the invention of the reissue is described as the invention in the original, and that the patentee intended to secure it as his invention in the original, the reissue is invalid. It is not for the same invention."

What are the facts in the case before the court? The original patent—that is, the application therefor—was based upon one central thought, viz., a device that should "provide means that will present a larger bearing surface than any of the devices now in use." Seven of the ten claims asked for were devoted to the arrangement of the rollers. All of these were rejected, and the rejection acquiesced in. Afterwards one was amended so as to include the spring, and allowed. Thus it will be seen the original patent and each of its claims call for anti-friction rollers nested or alternated, combined with a resilient centering device. These two things are vital elements of that patent. Now, it is sought by reissue to drop out the distinctive feature of the patent as described in the claims, and substitute another element, viz., any movable anti-friction arrangement for cars, whether nested or not. As above stated, this is a clear departure from the invention of the original patent, attempted almost two years after the original grant. While a patentee may not be limited to the purpose of his patent expressed in the specification, yet, in a proceeding like this, in which it is essential that his intention should be arrived at, it is not unreasonable that his stated purpose should be given due weight. The Commissioner found that the necessary inadvertence, accident, and mistake existed. Under the circumstances, it is difficult to see upon what evidence he based his finding. The same record is before the court now, and does not, in the judgment of the court, sustain that conclusion. It seems incredible that a man of sufficient intelligence to invent the device of the original patent could fail to discover at once that his patent did not purport to secure to him a monopoly of the combination of movable anti-friction side bearing for railway cars of every kind with centering springs. Under the circumstances, the delay of 23 months seems wholly unaccounted for.

In Ives v. Sargent, 119 U. S. 661, 7 Sup. Ct. 436, 30 L. Ed. 544, Mr. Justice Matthews quotes with approval the language of the court in Wollensak v. Reiber, 115 U. S. 96, 99, 5 Sup. Ct. 1137, 1139, 29 L. Ed. 350, as follows, viz.:

"It follows from this that if, at the date of the issue of the original patent, the patentee had been conscious of the nature and extent of his invention, an inspection of the patent, when issued, and an examination of its terms, made with that reasonable degree of care which is habitual to and

expected of men in the management of their own interests in the ordinary affairs of life, would have immediately informed him that the patent had failed fully to cover the area of his invention; and this must be deemed to be notice to him of the fact, for the law imputes knowledge when opportunity and interest, combined with reasonable care, would necessarily impart it."

He also cites and approves the following language in Mahn v. Harwood, 112 U. S. 354, 5 Sup. Ct. 174, 28 L. Ed. 665, viz.:

"If a patentee had not claimed as much as he is entitled to claim, he is bound to discover the fact in a reasonable time, or he loses all his right to a reissue; and if the Commissioner of Patents, after the lapse of such reasonable time, undertakes to grant a reissue for the purpose of correcting the supposed mistake, he exceeds his power and acts under a mistaken view of the law. The court, seeing this, has a right, and it is its duty, to declare the reissue pro tanto void in any suit founded upon it."

In the same case it is held that the time fixed by law with regard to public use, two years, might be deemed to be such a delay as to defeat the reissue. Here something less than two years had elapsed; but it is not the rule that two years must intervene. The circumstances of each case must control. Freeman v. Asmus, 145 U. S. 226, 12 Sup. Ct. 939, 36 L. Ed. 685. Under the facts of this case, even though an arbitrary period of two years had not intervened, yet there was unpardonable delay. It would seem to constitute practically indisputable evidence of what otherwise appears to be the fact; i. e., that Wands had no intention of claiming the spring broadly, with any movable anti-friction side bearing, as an invention at the time of filing his application. Whether he deemed that feature old in the art, or did not consider it a necessary element of his invention to secure a wider bearing surface, does not appear. When the examiner rejected, among others, claim 1 of his original application, he amended by adding the spring-centering device. His attention was thereby specifically called to the fact that the centering element was indispensable to his invention. He must have had this fact vividly in mind at that time. It was clearly treated by him as an incidental feature of his patented device.

It should not, however, be overlooked that in the original as well as the reissue specification (line 80, page 1) it is stated that:

"These rollers, 16, are preferably nested, or so alternated and located upon the shafts, 15, as that the periphery of each succeeding roller will overlap the periphery of the adjacent roller," etc.

It would therefore seem that, had Wands not limited his original claims to the nested arrangement, but had made the claim as broad as his specification, his original patent would have covered the substance of the claims of the reissue patent here under consideration, if the same may be deemed to be limited by the specification to movable anti-friction roller bearings. Under the statute, however, and the language of the Supreme Court in Ives v. Sargent, 119 U. S. 652, 7 Sup. Ct. 436, 30 L. Ed. 544, Wands was required to "particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention," and his invention was limited by the language of his claims.

It is apparent that the claims of the reissue patent here in suit are broader than the specification. This latter limits the invention to movable roller anti-friction bearings. Claims 4 and 5 in terms, and claim 6 in effect, cover any movable anti-friction device. It is held in White v. Dunbar, 119 U. S. 47, 7 Sup. Ct. 72, 30 L. Ed. 303, that the specification cannot be resorted to for the purpose of changing the claim and making it different from what it is. Nor can a patentee, who had claimed either more or less than was necessary, in a suit for infringement be relieved from the consequences. McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800. Our own Court of Appeals, in Anderson Foundry & Machine Co. v. Potts, 108 Fed. 379, 47 C. C. A. 409, has said:

"The true rule seems to be stated in McCarty v. Railroad Co., 160 U. S. 110, 116, 16 Sup. Ct. 240, 40 L. Ed. 358: * * * 'It is not permissible to read into a claim an element which is not present, for the purpose of making out a case of novelty or infringement.'"

So these claims must stand the ordeal of the prior art in this proceeding just as they read, independently of the specifications and of the other claims of the patent. Wilson v. McCormick Harvester Mch. Co., 92 Fed. 167, 34 C. C. A. 280; Penfield v. Potts & Co., 126 Fed. 475, 61 C. C. A. 371.

The resilient restoring or centering feature of the reissue patent in suit is not new even in anti-friction car bearings. It is found in Jewett patent, No. 418,828, granted December 4, 1889, where its function is the same as in the patent in suit, except that it is combined with anti-friction rollers arranged to take care of sidewise movements of the car body, instead of swiveling movements, as in Wands' device. This Jewett patent comes fairly within the language of claims 4, 5, and 6 of Wands' reissue patent in suit. The King patent, No. 273,693, granted March 6, 1883, discloses a so-called spring case tapering upwardly, from the top of which protrudes the periphery of a properly journaled roller, which bears upon cushioning springs, resting upon the base of the box, by which arrangement a tilting movement is achieved in addition to the cushion effect. Says the inventor:

"My present invention consists in the peculiar construction, combination, and relative arrangement of the several parts that form the said side bearing, the object being, first, to have the springs properly supported, carried, and protected to sustain the vertical, horizontal, and oblique pressure to which they are subjected; second, to prevent the parts of the spring case from binding under such pressure; and, third, to provide more convenient and effective means for connecting and securing the parts together and limiting their motion."

The patentee further states that the roller or protruding wheel may even be dispensed with, as he finds—

"that sufficient relief is afforded against friction by the springs within the spring case, which together form said yielding bearing."

It is evident that the yielding side bearing will travel with the swaying movement of the car body to the limit of its play, which increases in the ratio of its depression in the case. When relieved from the strain, the springs must inevitably serve to re-center the bearing. This device differs from Wands' reissue claim 6 mainly in that (1) it has but

one roller, and (2) that its travel is, perhaps, less extended than that of Wands, being limited to the walls of its case (though it is doubtful whether the reissue covers a bodily rolling traversing movement). It possesses both sidewise and swiveling movement against the tension of the springs. The testimony of complainant's expert Livermore is that, "speaking broadly and entirely vaguely," Wands was not the first to produce a side bearing which might be called a side bearing provided with a spring-centered anti-friction device, though he does not think the claims in suit embody the subject-matter claimed by King. Whatever the difference, however, may it not in a sense be said to be only one of degree? It is, freely speaking, a movable anti-friction device combined with a resilient means for centering, even though the patentee may not have specifically claimed the latter feature, and comes generally within the language of the reissue claims in suit.

The spring-restoring device, in connection with railway anti-friction bearings, is also found in patent No. 348,741, granted to M. G. Hubbard September 7, 1886, patent No. 416,773, granted to W. Behrens December 10, 1889, and other devices not necessary to enumerate. Thus, even though the reissue claims in suit be deemed to have escaped the Scylla of the invalid reissue, they are straightway ingulfed in the Charybdis of the prior art. They are therefore held to be invalid.

Claims 1 and 2 of Wands' so-called second patent, No. 590,286, differ from the reissue patent substantially in that claim 1 calls for an arrangement of the centering device which shall be "parallel with the line of travel of the bearing," and claim 2 covers a spring arranged "parallel with the plane of the carriage." It is conceded that the restoring spring of Wands' original patent was arranged "parallel with the plane of the carriage." It is also true that the change from the flat spring of the original patent to the coil spring of the second patent involves merely the substitution of one form of spring for another. Complainant's expert, Livermore, concedes that:

"The recognition or discovery that coiled springs might be employed in combination with the anti-friction device involved carried with it the idea of the arrangement of coiled springs parallel with the line of travel of the anti-friction device."

Now it is too late to claim that invention may be predicated in the spring art upon the substitution of one form of spring for another. Both of the claims in suit are broad enough to cover the claims of Wands' original patent; i. e., nested or alternating rollers in connection with movable anti-friction car bearings. In view, therefore, of the facts (1) that more than two years intervened the grant of the original patent and that now in suit, and (2) the surrender of that patent, and (3) the invalidity of the reissue patent, it must be held that the subject-matter of these two claims was abandoned to the public.

The claims alleged to be infringed of the third Wands' patent (No. 694,503, dated March 4, 1902) are as follows:

"23. In a side bearing for cars, the combination with an anti-friction device of a track-plate, upon which the same is arranged. guides rising from opposite sides of the track-plate, said guides being provided with openings so as to enable air to sweep over the track, and resilient means co-operating with said anti-friction device to restore it to its normal position, substantially as described.

170 F.—62

"24. In a side bearing for cars, the combination with an anti-friction device of a track-plate, upon which the same is arranged, guides rising from opposite sides of the track-plate, said guides being provided with openings for the circulation of air, the ends of the bearing being open so as to permit air to sweep over the track-plate, and mechanism co-operating with the anti-friction device to restore it to its normal position, substantially as described.

"25. In a side bearing for cars, the combination with a base-plate having a way in which operates an anti-friction device, said way being free from pockets or other obstructions, thereby preventing the lodging or packing of dust, dirt, etc., an anti-friction device traversing said way, guides rising from the opposite side of said base-plate for guiding the anti-friction device in its movement, and resilient means supported by said guides and co-operating with the anti-friction device for restoring the same to its normal position, substantially as described.

"26. In a side bearing for cars, the combination with a way free from pockets and open at its ends, thereby admitting an unobstructed circulation of air over said way and around the anti-friction device arranged thereon, an anti-friction device traversing said way, an anti-friction device, a bearing-plate co-operating with said anti-friction device, the ends of said bearing-plate being cut away to permit the air to sweep over the way, and resilient means co-operating with the anti-friction device and the bearing-plate for restoring said parts to normal position, substantially as described.

"27. In a side bearing for cars, the combination with a way free from pockets or obstructions, thereby preventing the lodgment or packing of dust, dirt, etc., on the way, said way being open at its ends, guides on opposite sides of the way, openings in the guides, the open ends of the way, and the openings in the guides permitting a circulation of air over said way and around the anti-friction device arranged thereon, an anti-friction device traversing said way, and resilient means co-operating with the anti-friction device for restoring it to a central position, substantially as described."

As stated in complainant's brief, the construction referred to in these claims is characterized principally by the provision which is made for preventing the accumulation of dust and cinders within the structure, which would clog and interfere with its operative movements.

This patent was applied for June 21, 1901, a month after the granting of the Perry patent, No. 672,648. Wands has copied into this third patent the box-covered arrangement of the Perry patent, also the feature of the simultaneous compression of the coiled springs, both seemingly novel features of the Perry patent. If this Perry patent is valid, and the open track plate of the Wands' patent is a feature of patentable novelty, Wands' position is that merely of an improver of the Perry device.

The prevention of dust from clogging and interfering with the operation of side bearings is not a new problem. It was recognized as very desirable at an early date. Attempts have been made to solve it by inclosing the working parts; but, owing to the nature of the device, complete inclosure has been impossible. Many besides Wands have made openings to allow the dust to escape; but they seem to have been working on the principle of making the action of the parts push the dirt out, rather than that of allowing a free draft of air to blow it out. Some of the prior art patents show a more or less open structure, which undoubtedly, to some extent, would permit the passage of air and the consequent removal of dust; but none seem to recognize the principle and apply it so squarely as Wands. Patent to Barber, No. 620,092, seems to come closer than any of the others. He says:

"The bearing-plates, h¹, for the side-bearing rollers, h, are shown as provided with a central groove or depression, h⁶, running crosswise of the bearing surfaces and extending lengthwise of the car. The castings, h³, are also provided with end openings, h⁷, which register with the ends of the groove, h⁶, when the parts are in working position. This construction affords a draft passage for the currents of air when the car is in motion, and the air thus moving through the passageway, h⁶, h⁷, will blow out whatever dust or dirt may fall therein under the action of the wheels or from other causes. Hence by this construction the accumulation of dust, sand, or dirt on the bearing-plates, h¹, for the side-bearing rollers, h, will be prevented."

But an examination of the drawings shows that the air does not spread over and clear the bearing surface, h⁴ and h⁵, thus to prevent lodgment of dust on the bearing surface; but the air merely sweeps through the passage, h⁶, below the bearing surface, so that dirt dislodged by the rollers may be carried away.

Wands seems to have been the first to apply this means of keeping the parts clean to roller bearings of the type involved in this case, and there seems to be a small modicum of invention in his arrangement. Defendants have substantially copied this feature of the Wands patent and must be held as infringers.

The Huntoon patent, No. 694,549, is for a street car side bearing. It involves none of the controlling features of the other patents herein. There is no question of spring-restoring devices, or nested or any other kind of movable rollers. Nor does it seem to be germane at all to the matters contained in the other patents in suit. As to it defendant very properly urges the defense of multifariousness. That defense, however, is one for the discretion of the court. It should not prevail in a case in which the testimony has been taken and final argument had. It is clearly the duty of the court at this time to consider the case upon its merits, and thus avoid the trouble and expense of a rehearing of the cause. It was never devised for the purpose of embarrassing the disposition of court business, but rather for facilitating it. Therefore the motion to dismiss will be overruled.

The validity of the patent does not seem to be seriously assailed, although the court is referred to several prior patents. Only claims 1, 3, and 9 are before the court. They read as follows, viz.:

"1. In a side bearing for cars, the combination with a box-shaped base of spindles loosely journaled therein, and rollers loosely mounted on said spindles, said rollers protruding through the top of the box, substantially as described."

"3. In a side bearing for cars, the combination with a boxed-shaped housing, formed with blind bearings. of spindles loosely journaled in said bearings, and rollers on said spindles which protrude through openings in the cover of the box-shaped housing, substantially as described."

"9. A side bearing for cars, the combination with a box-shaped housing of spindles journaled therein, rollers on said spindles, and a cover-plate provided with openings through which said rollers protrude, said cover-plate also having lugs which are arranged above the spindles to hold the same against vertical movement, said lugs also serving to lock the cover-plate against lateral movement, substantially as described."

While the answer is evasive as to infringement, it is deemed to be a positive denial of infringement, except so far as it may be deduced from the admission by defendants that they have manufactured under their patents No. 672,648, 728,857, and 806,360, granted to Hubert

N. Perry, which patents they aver do not infringe complainant's patent in suit. Comparing the claims in suit with those of patent No. 806,360, which read as follows, viz.:

"1. A side bearing for cars, comprising a box-like base member, a journal mounted therein, an integral open-ended cylinder mounted upon said journal, a series of rollers mounted within said cylinder around said journal, a pair of washers mounted upon said journal at the ends of said rollers and constituting smooth confining bearings therefor, and a top plate provided with apertures through which said cylinders·revolubly protrude, said top plate overlying the upper edges of said washers and provided with integrally-formed lugs having curved bearing-surfaces overlying and confining said journal, substantially as described.

"2. A side bearing for cars, comprising in combination a box-like base member provided with air passages therethrough, bearing supports upon the inner walls of said base member, a journal mounted within said bearing supports, an open-ended cylinder mounted upon .said journal between said bearing supports, a series of rollers mounted within said cylinder around said journal and moving thereupon, a pair of washers mounted upon said journal, and confining said rollers within said cylinder and also forming smooth bearings for the ends of said rollers, a top plate secured to said base member and overlying the upper edges of said washers, and provided with an aperture through which said cylinder revolubly protrudes, and lug members upon the under side of said top plate fitting between said washers and the wall of said box-like base over said journal and confining same in its bearings, substantially as described"

—it appears that the latter patent differs from the claims of the Huntoon patent in suit, in that the journal or shaft of the Perry patent is separated from the cylinder by rollers held in place by washers at their ends upon which the cylinder freely revolves, thus having ·a roller bearing, while the Huntoon, called by him a roller, revolves freely upon the shaft or journal, or spindle, as he calls it. The latter patent calls for a cylinder or roller which may or may not have a bushing or sleeve between itself and its shaft or spindle. Broadly speaking, the one has a roller bearing and the other has not. Huntoon, in claims 1 and 3 of his patent, calls for loosely journaled spindles. Perry makes his journal bearings snug. Both patents disclose a movable bearing, however, and neither discloses just how snug or loose the bearing may. be. In both it is evident that the journal or spindle bearing is intended to relieve any binding action of the roller upon its .journal, thereby supplementing the same.

While the validity of the Huntoon patent is deemed to be conceded by the defendants, it still becomes necessary to look into the prior art for the purpose of ascertaining the scope to be given to it. It will be noticed that the rollers or cylinder of both patents bear only upon their shaft or spindle supports. Their peripheries do not travel upon the under plate of the device, as in the ·Wands patents. Consequently they may be located in a stationary frame, and will always respond to the swiveling motion of the car, while the rollers running upon a plate or flat surface will bind when they are under pressure and at the limit of their movement in their frame. In these latter cases, it is essential that the roller frames be movable. It is, therefore, in the freely mounted wheel or roller side-bearing art that we must look for anticipations of the Huntoon patent. In this search, neither of the parties has been at much pains to assist the court, although

there must be considerable data upon the subject. Defendant's counsel do, however, cite: (1) Merrick patent, No. 38,973, of 1863; (2) Galloway patent, No. 168,476, of 1875; (3) Harding patent, No. 661,-981, of 1900; (4) Marquardt patent, No. 331,311, of 1885.

The Merrick patent calls for a wheel which rolls upon its bearings upon the bed plate. A wheel which rests upon the bed plate, and does not hang upon its bearings and remain free from the bed plate, is not in point here. The Galloway patent discloses a railway car bearing which employs two wheels or rollers traveling upon their own axles, substantially as shown in the patent in suit, and having no other resemblance thereto. The Harding patent shows a side bearing for railway cars having wheels or rollers freely hung and moving upon their axles, free from contact with the base plate, and whose peripheries protrude from the bearing case or box, which is not arranged to meet the requirements of the claim in suit. The reference to the Marquardt patent relates only to the form of the cover-plate fastening. The free wheel may be found in the before-mentioned King patent, No. 273,693, for a side bearing, though differently adjusted.

The wheel or roller used by Huntoon as an anti-friction device is not new, unless its arrangement is new. The patentee declares his object to be the construction of "a device of the character described in a simple and compact form, the parts being readily assembled and dismantled, whereby repairs can be quickly and easily made." His device seems to accomplish this end. It is not made to appear in the record that it has been shown or even attained before. True, its elements are all old; but, if it accomplishes what he asserts for it, he is entitled to claim it as an effective combination. Under the circumstances, can defendants' roller-bearing cylinder be deemed an equivalent of Huntoon's spindle? At most, Perry has added a new feature, the anti-friction rollers between the cylinder and journal, together with the necessary end washers. His use of two rollers or wheels, instead of four, does not amount to invention. It would seem as though any mechanic would think of the Perry roller-bearing device. It is so very old in every art involving the subject of rotation.

As the court approaches the end of this tedious aggregation of alleged infringements, it is impressed with the thought that the record discloses rather more evidence of a purpose to tiptoe at the heels of complainants' patentees than is consistent with independent research into the legitimate fields of invention. It is one of complainant's grievances that Perry was formerly in its employ, and left for the purpose of joining hands with the defendant Laughlin in order to injure complainant's business. However that may be, as to all the matters in dispute it would seem as though defendants' eagerness to approximate as nearly as they dare the device of the patent in suit, has led them to overstep the borders of Huntoon's domain, and they are held to be infringers.

Counsel for complainant has devoted much of his argument to the contention that defendant Henry D. Laughlin is personally responsible for the acts of the Perry Side Bearing Company. This is charged in the bill and not denied by the answer. There seems to be no doubt that Laughlin owned all but a nominal amount of the stock and di-

rected the acts of the corporation. This is established by his admis·· sions in his answer and testimony, and his express assertions that he had personal control of the company. He makes no effort to deny that he was behind the acts of the company, and, indeed, in his letter to complainant of November 14, 1904, says that he holds himself responsible for the acts of the Perry Side Bearing Company. Although the answer contains a general denial that Laughlin acted in any way but as a corporate officer, there seems to be abundant ground for his joinder with defendant company in this suit. Saxleher v. Eisner, 147 Fed. 189, 77 C. C. A. 417; Whiting Safety Catch Co. v. Western Wheeled Scraper Co. et al. (C. C.) 148 Fed. 396.

Infringement is therefore decreed as to patents 694,503 and 694,549, and denied as to the reissue patent No. 11,611 and patent No. 590,286. A decree may be drawn in accordance with the above findings.

